# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 25, 2012

No. 11-40632

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

JOSE MIGUEL ESCALANTE-REYES,

Defendant – Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and KING, JOLLY, DAVIS, SMITH, GARZA, STEWART, DENNIS, CLEMENT, PRADO, OWEN, ELROD, SOUTHWICK, HAYNES, GRAVES, and HIGGINSON, Circuit Judges.

HAYNES, Circuit Judge, joined by JOLLY, DAVIS, STEWART, DENNIS, PRADO, ELROD, SOUTHWICK, GRAVES, and HIGGINSON, Circuit Judges:

In this case we answer the following question: whether, when the law at the time of trial or plea is unsettled, but becomes clear[1] while the case is pending on appeal, review for the second prong of the "plain error" test properly considers the law as it stood during the district court proceedings ("time of trial") or at the

---

[1] Importantly, we address here only the narrow question of matters unsettled at the time of trial which are settled or clarified by the time of (not in) the appellate decision in question.

No. 11-40632

time of the appellate court's decision ("time of appeal"). We join the majority of other circuits in answering this question as follows: "time of appeal."

A large majority of us concur that this case presents this question squarely, though perhaps not perfectly. Recognizing the intra- and inter-circuit split on this question, *see United States v. Broussard*, 669 F.3d 537, 554 (5th Cir. 2012), *petition for reh'g filed*, we determined to hear this case[2] en banc in the first instance to resolve the issue. We turn, then, to the explanation for our decision.

## I. Analysis of the En Banc Question

### A. The Text of the Rule

We start with the Federal Rules of Criminal Procedure. Rule 51(b) – sometimes called the "contemporaneous objection rule" – advises that a party "may preserve a claim of error by informing the court" at the time of the action or ruling. FED. R. CRIM. P. 51(b). We reaffirm the importance of the contemporaneous objection rule in the orderly process of trial court matters. But the rules do not make the absence of a contemporaneous objection fatal to the party's efforts to correct an error on appeal. The very next rule states: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." FED. R. CRIM. P. 52(b). As with any statutory or rule analysis, we start with the text of the rule.

Unfortunately, the rule itself gives little assistance as to the question of timing; the first clause speaks to the present: "that affects," while the last clause

---

[2] Because we first address this legal question, we will provide the facts necessary for the determination of the particular case further in the opinion. By way of background, we note that the claimed "plain error" is considering Escalante-Reyes's need for anger management courses in prison in determining the length of his sentence. After the sentencing hearing in this case, the Supreme Court decided *Tapia v. United States*, 131 S. Ct. 2382 (2011), which cleared any confusion over whether rehabilitation or correction can be considered in deciding whether to sentence a defendant to prison and for how long.

No. 11-40632

uses the past tense of "was."[3] We conclude that the term "was" does not answer the timing question. Instead, read most naturally, it is simply referring to the fact that the lack of a contemporaneous objection occurred in the past, as it necessarily would by the time an appellate court would receive the case. We cannot read into this use of the past tense a requirement that the error be "plain" at the time of trial. The Government also argues that by using the pronoun "it" in the second clause, the rule is referring to "plain error" in the antecedent clause and means that the error had to be plain at the time of trial. We conclude that a more natural reading of the rule is that "it" refers back to the noun it replaces – "error" – and that the term "it" encompasses the error now under consideration without addressing when it was plain.

B. Supreme Court Precedents

We turn then to Supreme Court precedent. The Supreme Court has identified four requirements for reversing a trial court based upon plain error review: (1) "there must be an error or defect—some sort of [d]eviation from a legal rule—that has not been intentionally relinquished or abandoned"; (2) "the legal error must be clear or obvious, rather than subject to reasonable dispute"; (3) "the error must have affected the appellant's substantial rights"; and (4) "if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (citation and internal quotation marks omitted and alterations in original).

---

[3] Indeed, if the text of Rule 52(b) was dispositive on the timing issue, the Supreme Court likely would have relied on the Rule's text in *Johnson v. United States*, 520 U.S. 461 (1997). In that case, which is discussed in greater detail below, the Court relied on a policy consideration—not the Rule's text—in deciding the timing of plain error when the law at the time of trial was settled but contrary to the law at the time of appeal. *Id.* at 467-68.

3

No. 11-40632

Though it has had opportunities to do so, the Supreme Court has not spoken directly to the timing issue when the law is unsettled at the time of trial but becomes clear by the time of appeal. In *United States v. Olano*, 507 U.S. 725 (1993), the Supreme Court noted that "plain" is "synonymous with 'clear' or, equivalently, 'obvious.'" *Id*. at 734. However, the Court specified that it "need not consider the special case where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified. *At a minimum*, a court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law." *Id*. (emphasis added).

Approximately four years after *Olano*, the Supreme Court decided *Johnson*, in which it held that "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be 'plain' at the time of appellate consideration." 520 U.S. at 468. The Court reasoned that it would be futile for a lawyer to object to an "error" that clearly was not an error under the law as it existed at that time. *Id*. at 467-68. If objections were required to preserve such an error, counsel would have to make "a long and virtually useless laundry list of objections to rulings that were plainly supported by existing precedent." *Id*. at 468. Both *Olano* and *Johnson* left open the question of when the "plainness" of an error would be evaluated in a situation where the law was unsettled at the time of trial, but was clear at the time of appeal. If the Supreme Court believed this issue to be determined, it would have said so in one of these cases. It did not.

C. Circuit Precedents

Thus, we turn to our own precedents and those of our sister circuits. As well-stated in *Broussard*, our own precedents do not speak with one voice. *Compare Broussard*, 669 F.3d at 554-55 (concluding that where an error is unclear at the time of trial but clear on appeal, the court should apply the law at the time of appeal), *with United States v. Henderson*, 646 F.3d 223, 225 (5th

4

No. 11-40632

Cir. 2011), (addressing the same issue and stating that the law should be evaluated at the time of trial), *cert. granted*, 2012 U.S. LEXIS 4687 (U.S. June 25, 2012) (No. 11-9307) . The earliest of our cases to interpret *Olano* held that plain error is to be evaluated at the time of appeal. *See United States v. Knowles*, 29 F.3d 947, 951 (5th Cir. 1994) ("It is of no consequence that [the appellate case that clarified the law] was decided after the proceedings in the district court concluded. Since this case is on direct appeal, newly announced rules apply." (citing *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)).[4] *Broussard* resolved the issue by following *Knowles*, as it is the earlier opinion on this issue. *Broussard*, 669 F.3d at 554-55; *see also United States v. Hudson*, No. 10-11191, 2012 U.S. App. LEXIS 367, at *3-4 (5th Cir. Jan. 6, 2012) (per curiam) (unpublished). Of course, in this en banc case, we are in a position to harmonize our prior precedents and speak with one voice.

---

[4] The dissenting opinion filed by Judge Smith argues that the Supreme Court's decision in *Griffith*—which held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final . . .," 479 U.S. at 328—counsels in favor of evaluating the error at the time of trial. *See* Smith Dissenting Op. at 6-8. However, in *Johnson*, the Supreme Court applied *Griffith* to the first prong of plain error analysis, *not* the second prong. *See Johnson*, 520 U.S. at 467 ("Because petitioner is still on direct review, *Griffith* requires that we apply [*United States v. Gaudin*, 515 U.S. 506 (1995)] retroactively. Accordingly, under *Gaudin* there was 'error,' and the first prong of *Olano* is satisfied."). By applying *Griffith*'s retroactivity principle to the first prong and not the second, the Court implies that *Griffith* is not relevant to the issue of when plain error should be evaluated. Further, in a Fourth Circuit opinion that supported a time of trial rule, the court reached a similar conclusion, noting that "*Griffith*'s holding that a defendant whose direct appeal is pending receives the benefit of a new rule for purposes of determining whether the district court erred, bears not at all on the second requirement of *Olano*, that the error be 'plain.'" *United States v. David*, 83 F.3d 638, 643 n.6 (4th Cir. 1996).

Additionally, even if *Griffith*'s retroactivity principle does apply to the second prong, several appellate courts have reached the opposite conclusion from that of this dissenting opinion; specifically, they have held that *Griffith* counsels in favor of finding plain error at the time of appeal. *See, e.g.*, *United States v. Retos*, 25 F.3d 1220, 1230 (3d Cir. 1994) (discussing *Griffith*'s retroactivity principle in choosing to apply the time of appeal rule); *United States v. Baumgardner*, 85 F.3d 1305, 1309 (8th Cir. 1996) (same). Thus, the argument that *Griffith* counsels in favor of adopting the time of trial rule is not persuasive.

No. 11-40632

Our sister circuits also are not uniform, but the vast majority have either implicitly or explicitly adopted the "time of appeal" rationale. The Ninth and District of Columbia Circuits are the only circuits squarely holding that if the law is unclear at the time of trial and later becomes clear, the error is evaluated based on the law as it existed at the time of trial. *See, e.g., United States v. Mouling*, 557 F.3d 658, 664 (D.C. Cir. 2009) ("We therefore hold that where, as here, the law was unsettled at the time of trial but became settled by the time of appeal, the general rule applies, and we assess error as of the time of trial."); *United States v. Turman*, 122 F.3d 1167, 1170 (9th Cir. 1997) ("When the state of the law is unclear at trial and only becomes clear as a result of later authority, the district court's error is perforce not plain; we expect district judges to be knowledgeable, not clairvoyant.").

In contrast, the First, Second, Tenth, and Eleventh Circuits have explicitly held that the plainness of error is evaluated at the time of appellate review when the law is unsettled at the time of trial but becomes clear by the time of appeal. *See, e.g., United States v. Cordery*, 656 F.3d 1103, 1106-07 (10th Cir. 2011) (adopting the "blanket rule" that plain error is established at the time of appeal, regardless of whether the error was "plain or obvious at the time of sentencing" or trial); *United States v. Garcia*, 587 F.3d 509, 520 (2d Cir. 2009) (concluding that "[w]hether an error is 'plain' is determined by reference to the law as of the time of appeal" in a case where the law was unclear at the time of sentencing but later became clear (internal citation and quotation marks omitted)); *United States v. Ziskind*, 491 F.3d 10, 14 (1st Cir. 2007) (citing *Johnson* for the proposition "that error is plain if the law is clear at the time of direct appellate review, even though governing law was unclear at time of trial"); *United States v. Underwood*, 446 F.3d 1340, 1343 (11th Cir. 2006) (holding that "even though the error was not plain at the time of sentencing, the subsequent issuance of [a

No. 11-40632

Supreme Court opinion] establishes that the error is plain at the time of appellate consideration").

Additionally, the Third, Sixth, Seventh, and Eighth Circuits state that they would evaluate the plainness of error at the time of appeal, although these circuits have not expressly decided the issue of whether this principle applies when the error is unclear at the time of trial. *See United States v. Crosgrove*, 637 F.3d 646, 656-57 (6th Cir. 2011) ("However, the requirement that the error be plain means plain under current law. . . . For plain error review, current law is the law as it exists at the time of review." (internal citation and quotation marks omitted)); *United States v. Baumgardner*, 85 F.3d 1305, 1308 (8th Cir. 1996) (holding that "the plain error prong of the *Olano* standard should be determined in accordance with the law at the time of appeal"); *United States v. Ross*, 77 F.3d 1525, 1539 (7th Cir. 1996) ("[W]e now hold that for purposes of Rule 52(b), a 'plain' error is one that is clear and uncontroverted at the time of appeal."); *United States v. Retos*, 25 F.3d 1220, 1230 (3d Cir. 1994) (holding that "inasmuch as the district court's [ruling] was clearly and obviously erroneous under current law, we hold that it constituted 'plain' error").[5]

D.    Our Decision

We conclude that *United States v. Farrell*, 672 F.3d 27 (1st Cir. 2012) presents the better-reasoned view. As *Farrell* suggests, the purpose of plain error review in the first place is so that justice may be done. *See id.* at 36-37. The contemporaneous objection rule is, in part, intended to prevent lawyers from deliberately withholding an objection in an effort to gain another "bite at the apple" on appeal in the event that they are unsatisfied with the court's ruling.

---

[5] The Fourth Circuit has issued inconsistent rulings on this question. *Compare David*, 83 F.3d at 645 (judging the plainness of error at the time of trial), *with United States v. Maxwell*, 285 F.3d 336, 342 (4th Cir. 2002) ("[T]he error need not be plain at the time the district court erred as long as the error is plain at the time of appellate consideration.").

*See Puckett*, 556 U.S. at 134. But the plain error rule recognizes that not all failures to object are strategic.[6] Indeed, some (maybe most) of the time, the failure to object is the product of inadvertence, ignorance, or lack of time to reflect. The four-pronged *Puckett* test strikes the balance between preventing the kind of "second bite at the apple" strategic decisions described above and avoiding the loss of rights due to counsel's (or a party's) error by making plain error review much more stringent and difficult than the standard of review that would otherwise apply (sometimes de novo and sometimes clear error or abuse of discretion). *See id.* at 135 (noting that Rule 52(b) strikes a "careful balance . . . between judicial efficiency and the redress of injustice").

Further, in the narrow situation we face here, it is unlikely that we would face a deliberate strategic decision by counsel, since by waiting to object, the party asserting the error would be taking a risk that the appellate court would not rule in its favor on the unsettled issue. *Cf. Ross*, 77 F.3d at 1539 (noting that "[f]orfeiture . . . prevents defendants from strategically withholding objections in order to assert them on appeal and obtain a new trial," but concluding that plain error review allows "the rule of forfeiture [to] bend slightly if necessary to prevent a grave injustice" and adopting the time of appeal rule). In the vast

---

[6] The dissenting opinions authored by Judges Smith and Garza argue that we should focus on the judge's and prosecutor's role—rather than the defense attorney's role—in guarding against plain error, citing *United States v. Frady*, 456 U.S. 152 (1982), for the proposition that "[b]y [Rule 52's] terms, recourse may be had to the Rule only on appeal from a trial infected with error so 'plain' the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." *Id.* at 163. The dissenting opinion authored by Judge Smith states that "the definition [of plain error] focuses on the judge and prosecutor rather than on defense counsel." Smith Dissenting Op. at 3. The dissenting opinion authored by Judge Garza also cites *Frady* for a similar proposition. Garza Dissenting Op. at 5. However, the Supreme Court has since decided *Johnson*, which held that an error may be "plain" even when at the time of trial, the law was contrary to the law at the time of appeal. *See Johnson*, 520 U.S. at 468. In *Johnson*, the error was not "plain" to the judge or the prosecutor at the time of trial, but the Supreme Court nonetheless found that the error should be evaluated at the time of appeal. If the Supreme Court felt that it was bound by *Frady*'s "definition" of plain error (i.e., that the error must be clear to the judge and prosecutor), it would not have decided *Johnson* as it did.

majority of plain error cases, there will be no intervening Supreme Court decision, meaning that establishing a "time of appeal" rule would not significantly alter trial counsel's incentive to object. Counsel necessarily would not have a crystal ball to know that the Supreme Court would favorably decide a case in the interim. This is different from a case where a party hides an error that it knows would mandate reversal on appeal; that is not the situation we address here.[7]

"[T]he focus of plain error review should be 'whether the severity of the error's harm demands reversal,' and not 'whether the district court's action . . . deserves rebuke.'" *Farrell*, 672 F.3d at 36 (quoting *Ross*, 77 F.3d at 1539-40). "The plain error rule is protective; it recognizes that in a criminal case, where a defendant's[8] substantial personal rights are at stake, the rule of forfeiture should bend slightly if necessary to prevent a grave injustice." *Ross,* 77 F.3d at 1539; *see also United States v. Young*, 470 U.S. 1, 15 (1985) ("The plain-error doctrine of Federal Rule of Criminal Procedure 52(b) tempers the blow of a rigid application of the contemporaneous-objection requirement." (footnote omitted)).

Applying a "time of appeal" test also is more practical. Instead of having to try to go back in time and determine what was "clear" or "unclear" at the time of trial and potentially applying law we now know to be incorrect, we can simply

---

[7] Indeed, even if the counsel were deliberately withholding an objection, we all agree that plain error review would be available for an error "clear" at the time of that deliberate decision, unless counsel announced something that amounted to a waiver. Thus, an examination of the motivations of counsel – a difficult task in and of itself – is not part of the plain error review analysis.

[8] Although most cases applying the plain error review standard involve errors alleged to have harmed criminal defendants, the plain error rule is available to the Government as well. *United States v. Willingham*, 497 F.3d 541, 544, 546 (5th Cir. 2007) (concluding that the Government should prevail on its sentencing appeal applying a plain error standard of review to the Government's unpreserved claim of error). Thus, the rule we announce in this opinion is not one-sided and will serve to promote justice under the law for both the Government and the defendant in these circumstances.

apply the law as it is and determine whether the error is plain.  This approach also allows the "reviewing court to avoid the elusive and potentially onerous case-by-case determination of whether the law was 'settled' or 'unsettled' at the time of trial." *Farrell,* 672 F.3d at 37.

Of course, determining that the error is plain is by no means the end.  The third and fourth prong of *Puckett* continue to be stringent requirements that encourage counsel to make contemporaneous objections and avoid the strictures of those prongs.  *See, e.g., United States v. Marcus*, 130 S. Ct. 2159, 2164 (2010) (noting that a court of appeals may only correct an error that was not objected to in the trial court if the four elements of the plain error test are met). We conclude, therefore, that where the law is unsettled at the time of trial but settled by the time of appeal, the "plainness" of the error should be judged by the law at the time of appeal.

## II.  Application to this Case

Turning to the facts of this case, Escalante-Reyes was convicted of illegal re-entry under 8 U.S.C. § 1326.  He contends that the district court erred in considering his need for anger management courses in determining the length of his sentence.  During the sentencing hearing, the judge looked through Escalante-Reyes's file and noted instances of fighting in his past, stating: "Well there's a temper and anger problem here, too. . . . So there's a problem there. And it seems to me that that's what we have to get under control.  And that's got to be the basis for what good prison will do for this Defendant."  Shortly thereafter, the district court announced its sentence, which included a recommendation for anger management courses while in prison.  The defendant's attorney objected that the district court did not adequately explain its reasons for the length of the sentence.  In responding, the district court mentioned only two things:  Escalante-Reyes's quick return to the United States

and that "[h]e has a problem with his anger management. He has things that need to be addressed."

Under *Tapia*, this determination was error. *See* 131 S. Ct. at 2393 (holding that a district court "may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation"). Given our ruling on the "timing of plain error," the error was plain.

Before we address the third and fourth prongs of plain error, it is important to note that we did not take this case en banc to address how the third and fourth prongs of plain error review should be applied in sentencing appeals. We continue to adhere to our prior precedent with respect to the third and fourth prongs of plain error review. Reversal for plain error is necessarily a fact-specific inquiry and, as we have previously noted, a finding that there was an error that was plain will not automatically lead to reversal. *See, e.g.*, *United States v. Davis*, 602 F.3d 643, 648, 650 (5th Cir. 2010) (concluding that although there was an error that was plain, reversal was not warranted because the error was "not the sort that we should, on plain error review, exercise our discretion to remedy"); *United States v. Mondragon-Santiago*, 564 F.3d 357, 364-65 (5th Cir. 2009) (finding that although the defendant met the first two prongs of plain error, he failed to show that the error affected his substantial rights).

We now turn to the task of assessing the third prong of plain error—whether the error affected Escalante-Reyes's substantial rights. "To affect the defendant's substantial rights, the defendant must demonstrate that the error affected the outcome of the district court proceedings." *Broussard*, 669 F.3d at 553. In the context of sentencing, we ask "whether the error increased the term of a sentence, such that there is a reasonable probability of a lower sentence on remand." *United States v. Garcia-Quintanilla*, 574 F.3d 295, 304 (5th Cir. 2009).

No. 11-40632

For example, in *Garcia-Quintanilla*, we held that a district court's imposition of a sentence that was greater than the Guidelines range based on the view that the court could later suspend the sentence after it began—which we determined to be an error that was "plain"—affected the defendant's substantial rights because "the possibility of suspension was an essential aspect of this sentence." *Id.* We held that "[b]ecause the possibility of suspension was so central to the sentence that [the defendant] received, we cannot confidently say that the district court would have imposed the same sentence" absent the error. *Id.*

The facts of this case are similar to those in *Garcia-Quintanilla* in that here, the need for anger management treatment was such a central part of the district court's explanation of Escalante-Reyes's sentence that "we cannot confidently say that the district court would have imposed the same sentence" without it. *Id.* The district court clearly stated that Escalante-Reyes had a problem with anger "[a]nd that's got to be the basis for what good prison will do for this Defendant."

In a conclusory fashion, the Government argues that the district court was "convinced" it had given the right sentence. Implicitly, then, the Government is arguing that the district court would have given the same sentence regardless of the *Tapia* error. For his part, Escalante-Reyes argues that there is a reasonable probability his sentence would have been lower. He notes that the district court referred twice to the need to get Escalante-Reyes's anger under control and the efficacy of prison to do so. In a relatively short sentencing hearing, the anger management issue loomed large.

While the district court gave a slightly-below Guidelines sentence, the circumstances show a probability that the court's mercy was, as Escalante-Reyes noted, "tempered" by the desire to have him receive anger management training. The recommended Guidelines range was 63-78 months, and the district court

No. 11-40632

sentenced Escalante-Reyes to 60 months. Escalante-Reyes's counsel immediately objected to the sentence, arguing that it was "greater than necessary to satisfy the factors under 3553(a)." In response, the district court reiterated that Escalante-Reyes "has a problem with his anger management" and that "[h]e has things that need to be addressed." We conclude that the error affected substantial rights because the district court's repeated emphasis on the need for anger management treatment in prison was sufficient to undermine our confidence that the district court would have imposed the same sentence absent the error. *See Garcia-Quintanilla*, 574 F.3d at 303-04.

The fourth prong of plain error asks whether the error affects "the fairness, integrity, or public reputation of judicial proceedings" such that the appellate court should exercise its discretion to correct the error. *See Puckett*, 556 U.S. at 135 (internal citation and quotation marks omitted). We respect the discretion a sentencing court has in making a decision on sentencing. Additionally, we do not view the fourth prong as automatic if the other three prongs are met. *See Davis*, 602 F.3d at 650. However, the Supreme Court has instructed that "the discretion conferred by Rule 52(b) should be employed in those circumstances in which a miscarriage of justice would otherwise result." *Olano*, 507 U.S. at 736 (internal citation and quotation marks omitted).

We continue to adhere to our precedent declining "to adopt a blanket rule that once prejudice is found under the [third plain error prong], the error invariably requires correction," *United States v. Reyna*, 358 F.3d 344, 352 (5th Cir. 2004) (en banc). This case is unlike those where the other three prongs were met and still we refused to correct a defendant's sentence. For example, in *Reyna*, we declined to exercise our discretion to correct an error related to the denial of a right to allocute at a defendant's third sentencing hearing even though the error otherwise met the first three prongs of plain error. *Id.* at 353. We found that the error did not affect the "fairness, integrity, or public

13

reputation of judicial proceedings" because the defendant had been given the right to allocute at his original sentencing hearing and at a second sentencing proceeding that was held after he violated the terms of his supervised release. *Id.* at 352-53. The defendant was warned during the second proceeding that he would be sent back to prison for twelve months if he violated the terms of his supervised release again, and he was given an opportunity to allocute at that time; therefore, we concluded that "[o]n the particular facts of this case, we are satisfied that the district court's error in failing to address Reyna and allow him to speak in mitigation of his sentence [at the third sentencing hearing] did not seriously affect the fairness, integrity or public reputation of his sentencing proceedings." *Id.* at 353.

Unlike such a case (as well as other similar cases), we are not satisfied that there is other evidence in the record that shows that Escalante-Reyes's sentence is "fair," or that the "integrity or public reputation" of the judicial proceeding was protected despite the erroneous consideration of Escalante-Reyes's need for anger management treatment in determining the length of sentence. In light of the sentencing record as a whole, we conclude that the district court's repeated emphasis on Escalante-Reyes's need for anger management treatment in prison affected the "fairness, integrity, or public reputation" of the sentencing proceeding. Given Congress's express admonition that "imprisonment is not an appropriate means of promoting correction and rehabilitation," 18 U.S.C. § 3582(a), and the Supreme Court's recent analysis in *Tapia*, we conclude that we should exercise our discretion to recognize this error.

Accordingly, Escalante-Reyes's sentence is VACATED and the case is REMANDED for resentencing in accordance with this opinion. Because of our disposition of this issue, we do not reach the other issues he raised.

No. 11-40632

JERRY E. SMITH, Circuit Judge, dissenting, joined by JONES, Chief Judge, and CLEMENT, Circuit Judge, and joined as to parts I.A, I.B, I.D and II by GARZA, Circuit Judge:

I respectfully dissent. For the first time ever, this court reverses a *below-*guideline sentence for alleged unfairness. And for at least the 181st time, it reverses a case on plain error, despite the Supreme Court's admonition that such reversals should be "rare," giving an en banc blessing to our rogue record of finding the fourth prong satisfied in over 70% of the reported cases.

The *Tapia* error[1] fails to meet both the second and fourth prongs of plain-error review. It fails the second prong, because plainness should be measured at the time of forfeiture in cases such as this, where the law is unsettled at the time of trial and becomes clear by the time of appeal. The error flunks the fourth prong, because it does not even come close to the standard of seriously affecting the fairness, integrity, or public reputation of judicial proceedings. The error does not satisfy the plain-error standard, so we should uphold Escalante-Reyes's sentence.

I.

Plainness of error should be measured at the time of forfeiture where the law was unclear at trial but becomes clear by the time of appeal. That interpretation is more in line with the purpose of "plainness" as indicated by the values and policies expressed by the Supreme Court. The majority's notion to the contrary—that the purpose of plain-error review is to do justice—is an oversimplification and a red herring. It is an oversimplification, because the "justice" pursued by the plain-error standard is itself a balance between the goals of accuracy and efficiency. It is a red herring, because it lumps the purpose of all

---

[1] *Tapia v. United States*, 131 S. Ct. 2382 (2011).

15

No. 11-40632

four elements of plain error together instead of focusing on the specific purpose of the "plainness" requirement.

A.

As the majority recognizes, the plain-error test has four prongs: (1) error; (2) that is plain; (3) that affects substantial rights; *and* (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See Johnson v. United States*, 520 U.S. 461, 466-67 (1997). The last two prongs are aimed specifically at avoiding the results that appear unjust to the appellate court, but all four prongs are required. Thus, the fact that the result seems unjust is one of the cumulative requirements to meet the plain-error standard; it is not the underlying inquiry upon which plain error expands. The relevant question is what, specifically, is the purpose of the plainness requirement in achieving this balance?

The majority focuses on the need to give defense counsel the incentive to point out errors. Focusing solely on the lawyer's incentives, however, ignores the broader role he plays in the proceedings. It falls to the defendant to notify the court and, especially, the prosecution of the need to develop the factual record further. *See Puckett v. United States*, 556 U.S. 129, 134 (2009). If defense counsel fails to point out that one of the prosecution's legal theories rests on muddled law, the prosecution is less likely to develop the record for an alternate theory of conviction where the legal basis may be more sound. *See Wainwright v. Sykes*, 433 U.S. 72, 89 (1977). In addition to reducing efficiency—because further trial proceedings are required after appeal and on remand—it reduces accuracy, because evidence becomes harder to produce as time moves on. The interests of accuracy and efficiency thus act in concert.

No. 11-40632

Raising legal issues at trial is equally important irrespective of whether the law becomes clear on appeal.[2] The problem—that the legal theory rests on muddled law—arises because the law is unclear at the time of trial, and it is independent of what happens by the time of appeal. Accordingly, the same measure of plainness—the law at the time of forfeiture—should apply in both cases.

The Supreme Court's definition sheds further light on the purpose of plainness. In *United States v. Frady*, 456 U.S. 152, 163 (1982), the Court defined it as "error so 'plain' the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." Thus, the definition focuses on the judge and prosecutor rather than on defense counsel. This is not because the second prong is concerned about being unfair to the judge, as Escalante-Reyes claims; it is instead because the defense's role in pointing out errors is redundant where the error is so obvious that the other actors should notice it. Where the prosecutor chooses to develop a factual record that supports only a "plainly" flawed theory of conviction, he is unlikely to have better evidence to put forward.

Furthermore, this sort of negligence on behalf of the defense will—perversely—tend to benefit the defendant. The prosecution bears a high burden of proof, so the inaccuracy caused by delay will disproportionately hurt its case. Nevertheless, the real problem here is reduced accuracy and efficiency on remand, even if defense attorneys are not intentionally being less diligent in the hope that the law might change.

---

[2] It is especially important for the defense to raise errors where the law is murky, because the prosecutor and court are least likely to notice errors in those cases. *See United States v. Turman*, 122 F.3d 1167, 1170 (9th Cir. 1997) ("When the law is such that an experienced judge cannot be expected to detect the error on his own, that is precisely when it is most important for the parties to object.").

No. 11-40632

## B.

Focusing on the incentives of the defense attorney, the majority makes arguments that seem to be general criticisms of plain-error review rather than contentions regarding the timing of plainness. The majority urges that (1) the last two prongs of plain error provide ample incentive to point out errors at trial, and (2) it is difficult to afford an attorney the incentive to point out an error he has not noticed. Both of those arguments have some validity, but they prove too much: Neither is more valid where the law changes on appeal than where it remains cloudy on appeal. Thus, it would be difficult to use that reasoning to justify measuring plainness on appeal without throwing out the plainness requirement altogether.

### 1.

The majority argues that giving attorneys the incentive to object by measuring plainness at the time of forfeiture is unnecessary, because the last two prongs of plain-error provide ample motivation to raise issues at trial. It is true that the last two prongs, coupled with the plainness requirement, theoretically provide some additional incentive to raise issues at trial.[3] Nevertheless, the last two prongs provide no more incentive to point out unclear law at the time of forfeiture where the law becomes clear on appeal. If the plainness requirement is justified where the law remains muddled on appeal—and no one argues that courts do not find the requirement justified in that case—then why is the marginal incentive it produces not justified when the law later becomes clear? A change in the law cannot retroactively alter incentives at trial.

---

[3] One could easily disagree, however, that much work is done by the last two prongs—at least in the Fifth Circuit Court of Appeals—given the laxity and inattention with which they are often applied. *See* part II.A, *infra*.

No. 11-40632

Contrast the instant case with *Johnson v. United States*, 520 U.S. 461, 468 (1997): The Court ruled that plainness should be measured at the time of appeal where—because the law was obviously contrary to the defendant's position—it would have been pointless for him to raise an issue at trial. Where the objection would be useless at trial, the defendant has little incentive to raise the error and cannot predict that the objection would have any value on appeal. The plainness requirement therefore adds no extra incentive to the defense to raise the error, nor does it give the prosecutor the incentive to develop an additional theory of conviction.

Not only would plainness fail to further the goal of accuracy at trial, it would hinder the goal of efficiency. A "time-of-forfeiture rule" in that case would give the defense the incentive to raise a laundry list of frivolous objections in hope that the law changes on appeal. In contrast to the instant case, in situations covered by *Johnson* the value of raising the objection at trial *changes* before appeal, so it follows that the measurement of plainness should change as well. Here, the defense should raise the objection where the law is muddled, *regardless* of whether it later becomes clear, so the measurement of plainness should remain the same.

2.

There is validity to the majority's contention that many (maybe most) failures to object at trial are the product of inadvertence rather than intentional withholding. Negligence is indeed harder to discourage than is wilfulness.[4] But again, this focus by today's majority is exclusively on defense counsel, ignores

---

[4] Although negligence may be impossible to prevent entirely through incentives, plain-error review encourages litigators to recognize the importance of adequate trial preparation and vigilance in making timely objections. *United States v. Chavez-Hernandez*, 671 F.3d 494, 497 (5th Cir. 2012). Litigators are less likely to make mistakes if they are better prepared and more attentive at trial.

the role of the prosecutor in developing the record, and is a criticism of plain-error review in general. The same inadvertence prevents attorneys in all plain-error cases from raising issues where the law is muddled. Negligence is not harder to dispel because the law later becomes plain before appeal. The negligence in not raising the error is equivalent regardless of what happens by the time of appeal.

## C.

The retroactivity principles discussed in *Griffith v. Kentucky*, 479 U.S. 314 (1987), also counsel in favor of the time-of-trial rule. *Griffith* held that changes in the law should always be applied retroactively for purposes of determining error on direct appeal. *Id.* at 328. In other words, error is always to be measured at the time of appeal.[5] If we faithfully apply *Griffith*'s analysis to considerations involved in plainness, however, we must conclude that plainness should be measured at the time of forfeiture.

Before *Griffith* announced the new rule that error is always to be determined at the time of appeal in criminal cases on direct review, courts decided the retroactivity of error on a case-by-case basis. *See id.* at 320-21. Courts examined the change in law and considered three factors to determine whether it applied to the case before them: (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. *Stovall v. Denno*, 388 U.S. 293, 297 (1967). Over time, that balancing approach led to the emergence of a category of cases in

---

[5] *Griffith* deals only with the timing of the measurement of error. It does not discuss plainness. The error at trial was properly objected to and preserved, so plain error was not a consideration. *Griffith*, 479 U.S. at 317.

which error was almost never determined retroactively: cases in which the new rule was a "clear break" with precedent. *Griffith*, 479 U.S. at 324-26.

Because of the last two retroactivity factors, error was generally not applied retroactively in the "clear break" category: When the law changed drastically, it disrupted the administration of justice, because law enforcement had relied on the old standards. *United States v. Johnson*, 457 U.S. 537, 549-50 (1982). In other words, the practicalities of law enforcement were the main factors that weighed against the retroactive application of error. *Griffith* then applied error retroactively to the "clear break" category, finding that the practicalities of law enforcement were outweighed by two considerations: (a) Applying error retroactively is more consistent with the idea that courts interpret law rather than change it; and (b) applying error retroactively better comports with the principle that two similarly situated defendants should be treated the same. *Griffith*, 479 U.S. at 322-25. Neither of these two factors that weighed against the practicalities of law enforcement in *Griffith* does so in this case.

First, measuring plainness at the time of forfeiture is not in tension with the idea that courts are not changing the law. Whether a ruling is in error turns on *what* the law is, whereas the plainness of an error turns on *how clear* the law is. *United States v. Olano*, 507 U.S. 725, 734 (1993). If a ruling is not an error on Monday and is an error on Tuesday, then the law must have changed. The situation is different with plainness. An error can be unclear on Monday and very plain on Tuesday without any change in the law. The plainness of the error changes because the law is clarified, and it is uncontroversial that courts are supposed to clarify the law. Therefore, the first consideration in *Griffith* is not implicated in our case.

Second, the time-of-forfeiture rule is consistent with treating similarly situated defendants the same. As with plain error generally, the defendant has a higher burden on appeal, because he did not make the necessary objection at

No. 11-40632

trial. In *Griffith*, the Court was troubled by the fact that the defendant had a higher burden because of a fortuitous event that he could not influence. The Court focused on the fact that the defendant would not have the beneficial rule of *Batson*[6] just because he was sentenced three months after the defendant in that case. *Griffith*, 479 U.S. at 327. Here, the relevant difference—as it always is where plain error review is implicated—is the action of the defendant's lawyer. If that is not a relevant line to draw among defendants, then all procedural forfeiture rules fail to treat similarly-situated defendants the same.

Thus, the two factors that weighed in favor of retroactivity in *Griffith* do not do so here. The interest in law enforcement—the need to establish an accurate factual record—does weigh against retroactivity, however. Therefore, the *Griffith* analysis suggests the time-of-forfeiture rule that the majority rejects.

## D.

The majority contends that the time-of-forfeiture rule is more difficult to apply because the determination of whether the law was unclear at the time of trial may be elusive. This is untrue for two reasons: (1) the determination of whether law is unclear is not especially difficult, as demonstrated by courts familiar with making that inquiry in several other areas of law; and (2) the time-of-forfeiture rule will simplify the plain-error inquiry where the law was obviously unclear at the time of trial.

The majority overstates the difficulty in applying a time-of-forfeiture rule. Indeed, courts are required to make similar determinations in deciding other issues where the availability of relief turns on the state of the law at the time an

---

[6] *Batson v. Kentucky*, 476 U.S. 79 (1986).

No. 11-40632

error occurred.[7] There is no reason to think a time-of-forfeiture rule would be any more difficult than are those determinations that courts routinely make, nor is there any indication that the circuits already applying the time-of-forfeiture rule have found it impractical or difficult.

Moreover, it may often be the case that the time-of-forfeiture rule renders plain-error review less onerous. In some cases, it is easier to determine that the second prong of the plain-error rule is not satisfied because the law was unsettled at the time of the district court proceedings. In those circumstances, an appellate court is able to reject a forfeited claim without engaging in the fact-intensive inquiry usually required to determine whether the third and fourth prongs are met. Indeed, that is the case here. A determination that a *Tapia* error was not plain at the time of sentencing because the law was unsettled at that time is not difficult.[8]

Furthermore, it is odd to justify the time-of-appeal rule on grounds of judicial efficiency, even if it saves time on appeal. By adopting that rule, the majority lowers the bar for plain-error review, which will undoubtably result in more

---

[7] *See, e.g.*, *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (stating that when applying 28 U.S.C. § 2254(d)(1), which provides that federal habeas corpus relief may not be granted to a state prisoner based on an error of law unless the error was contrary to or an unreasonable application of clearly established federal law, a court must refer to the law at "the time the state court renders its decision"); *Bousley v. United States*, 523 U.S. 613, 622-23 (1998) (holding that on collateral review, a court examines the time the error occurred in determining how "novel" a rule is for purposes of providing cause for a procedural default); *Teague v. Lane*, 489 U.S. 288, 311-12 (1989) (plurality opinion) (providing that new constitutional rules of criminal procedure are generally not applicable to cases that became final before the new rules were announced, so courts apply prior law on collateral review); *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982) (holding that public officials have immunity based on what law was clearly established at the time of their acts, even if the law has changed by the time of appeal).

[8] *See United States v. Henderson*, 646 F.3d 223, 225 (5th Cir. 2011) (explaining in a few sentences that *Tapia* error was not plain at the time of sentencing), *cert. granted*, 2012 U.S. LEXIS 4687 (U.S. June 25, 2012) (No. 11-9307). *Certiorari* has been granted in *Henderson*, which squarely presents the timing issue that this en banc court now confronts.

23

No. 11-40632

remands and new trials. Even assuming that the rule saves appellate resources, that savings will be more than counter-balanced by the need for new trials and resentencings.

Accordingly, this court should hold that plainness is measured at the time of forfeiture where the law was unclear then. Because (1) Escalante-Reyes's *Tapia* objection likely would have been fruitful had it been made at trial, and (2) the error was not so clear that the court or prosecution should have noticed it, the error does not meet the second prong of plain error review. The judgment of sentence should therefore be affirmed.

## II.

Even if the error in this case satisfies the first three prongs of plain error, this court should not exercise its discretion to reverse under plain-error review, because the error does not "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (internal quotation marks and alterations omitted). In addition to choosing, erroneously, the time-of-appeal rule, the majority perpetuates this court's unseemly practice of being far more permissive on plain-error review than the Supreme Court and common sense allow.

This court's regrettable drift toward bypassing entirely the high burden of the fourth prong is aptly summarized in a recent opinion by Judge Higginbotham, joined by Judges Elrod and Haynes:

> Th[e] emphasis on the second prong of plain error analysis is particularly important given the development of this court's case law on the third and fourth prongs of the plain error test in the sentencing context, where the court has been generous with remand, often finding that errors leading to substantial increases in sentences, even those errors not raised until appeal and thus subject to plain error review, merited remand, although we are not convinced

24

No. 11-40632

that the case law on this point is settled or as categorical as language in some cases might make it seem . . . .

Even if we were inclined, this is no occasion to offer metrics for the severity of an increase worked by decisions later found to have been error and such a departure as to summon our discretion to correct an injustice. Not every error that increases a sentence need be corrected by a call upon plain error doctrine. It bears emphasis that all defendants' appeals challenging a sentence rest on the practical premise that the sentence should be less. The doctrine of plain error serves powerful institutional interests, including securing the role of the United States District Court as the court of first instance, as opposed to a body charged to make recommendations to appellate courts. And even if an increase in a sentence be seen as inevitably "substantial" in one sense it does not inevitably affect the fairness, integrity, or public reputation of judicial process and proceedings. To conclude that not correcting the error claimed here casts doubt upon the fairness, integrity, or public reputation of the proceeding drains all content from the doctrine of plain error.

*United States v. Ellis*, 564 F.3d 370, 378 (5th Cir. 2009) (footnote omitted).

In regard to the third and fourth prongs, the majority's error in the instant case is that it gives them short shrift, stating that "it is important to note that we did not take this case en banc to address how the third and fourth prongs of plain error review should be applied in sentencing appeals." That is true only in part. Here, for the first time in decades and maybe for the first time ever, the court voted a case en banc without benefit of panel consideration.[9] That action is well justified, because, as the majority explains, we need to take sides in the inter-circuit split on the timing issue in applying the second prong.

But although the court has the discretion whether to take a case en banc, once we do so we have before us not just selected issues but the entire case. That

---

[9] *See* 28 U.S.C. § 46(c) (authorizing a "*hearing* or rehearing before the court in [*sic*] banc . . . ordered by a majority of the circuit judges of the circuit who are in regular active service) (emphasis added); FED. R. APP. P. 35(a)-(c); 5TH CIR. R. 35.6.

No. 11-40632

is especially so in this rare circumstance, where there has been no panel treatment of any issue. The en banc court thus has the same responsibility to address all four prongs that a panel would have, and the decision on the third and fourth prongs should not be taken lightly.

The en banc majority punts, however, stating that "[w]e continue to adhere to our prior precedent with respect to the third and fourth prongs of plain error review." The majority gives the third prong only five paragraphs, the fourth prong a scant three. That amounts to inadequate consideration of an important aspect of this case and leaves us with an unsupportable standard for applying especially the fourth prong, as I will explain. Moreover, the erroneous majority ruling on the fourth prong gives en banc validation to those panel opinions that take an approach to plain-error review that is "generous" and "permissive" and that fail to exact the requirement that an error seriously affect the fairness, integrity, or public reputation of judicial proceedings. *See Ellis*, 564 F.3d at 378 & n.44 (deploring the lax approach taken by this court on the fourth prong).

A.

The Supreme Court's modern four-prong approach to plain-error review, based in Federal Rule of Criminal Procedure 52(b), was first articulated in *Olano*, but the standard guiding appellate courts as to when to exercise discretion to overturn forfeited error finds its origins in *United States v. Atkinson*, 297 U.S. 157 (1936). Since *Atkinson*, appellate courts have been allowed to exercise their discretion under Rule 52(b) if errors "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 160.

What is more, since *Atkinson*, the Supreme Court has emphasized that a court of appeals should overturn a district court on plain-error review only in "exceptional circumstances." *Id.* The circuits should correct only "particularly egregious errors," and this power to correct should be "used sparingly." *United*

*States v. Young*, 470 U.S. 1, 15 (1985) (citing *United States v. Frady*, 456 U.S. 152, 163 & n.14 (1982)).  This court has only a "limited" and "strictly circum-scribed" power to correct forfeited errors.  *Olano*, 507 U.S. 735-36; *Puckett*, 556 U.S. at 134.  Defendants should be granted relief under plain-error review only "rarely," *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004), because "[m]eeting all four prongs is difficult, as it should be," *Puckett*, 556 U.S. at 135 (citation and internal quotation marks omitted).

Our sister circuits have appropriately echoed the Supreme Court's restric-tive approach to plain-error review.  In the First Circuit, "only the clearest and most serious of forfeited errors should be corrected on appellate review." *United States v. Padilla*, 415 F.3d 211, 223-24 (1st Cir. 2005) (en banc) (citations omit-ted).  Thus, "[t]he plain error doctrine concentrates on 'blockbusters' . . . . Under it, appellate courts will notice unpreserved errors only in the most egregious cir-cumstances." *United States v. Taylor*, 54 F.3d 967, 973 (1st Cir. 1995).  The Sec-ond Circuit requires those errors to be "so egregious and obvious as to make the trial judge and prosecutor derelict in permitting it, despite the defendant's fail-ure to object." *United States v. Vasquez*, 267 F.3d 79, 87 (2d Cir. 2001) (citations omitted).  The Seventh Circuit requires a similar level of egregiousness.  *See United States v. Conley*, 291 F.3d 464, 470 (7th Cir. 2002).

The Fourth Circuit has stated that "[p]lain error review exists to correct only the most grievous of unnoticed errors." *United States v. Robinson*, 627 F.3d 941, 956 (4th Cir. 2010).  Similarly, the Eighth Circuit has held that the "final prong of plain-error review is formidable," *United States v. Poitra*, 648 F.3d 884, 889 (8th Cir. 2011) (citations omitted), and the Tenth Circuit reverses only "par-ticularly egregious" errors "in those *rare* cases in which core notions of justice

No. 11-40632

are offended," *United States v. Gonzalez-Huerta*, 403 F.3d 727, 736, 739 (10th Cir. 2005) (en banc) (emphasis added).[10]

In contrast to Supreme Court precedent, which has commanded that plain-error relief be granted "sparingly" under "rare" and "exceptional" circumstances for only "particularly egregious errors," this court, as I have said, has at times described its approach to plain error review as "generous" and "permissive." *Ellis*, 564 F.3d at 378 & n.44. Although at other times the rhetoric of the Fifth Circuit has matched that of the Supreme Court,[11] this court's aggregated practice testifies to the truth of *Ellis*'s observation: Since *Olano* was decided, we have reversed on plain error at least 180 times. *See* Appendix A. Where the fourth prong has been reached, we have found it satisfied in an astonishing 72% of the cases. *Id.* Given the supposedly difficult nature of plain-error review, these numbers are disgraceful.

Limiting relief under plain error to rare and exceptional circumstances is not without reason, even if we had the latitude to question the Supreme Court's unequivocal pronouncements. We must always keep in mind that plain-error

---

[10] *But see United States v. Tapia*, 665 F.3d 1059, 1063 (9th Cir. 2011) ("We have regularly deemed the fourth prong of the plain error standard to have been satisfied where, as here, the sentencing court committed a legal error that may have increased the length of a defendant's sentence."); *In re Sealed Case*, 573 F.3d 844, 853 (D.C. Cir. 2009).

[11] *See, e.g.*, *Ellis*, 564 F.3d at 378-79; *United States v. Davis*, 602 F.3d 643, 651 (5th Cir. 2010); *United States v. Seale*, 600 F.3d 473, 490 (5th Cir. 2010); *United States v. Duarte-Juarez*, 441 F.3d 336, 340 (5th Cir. 2006) ("Even assuming that the district court's remarks at sentencing would satisfy the third prong of the plain error test, they are not sufficient to satisfy the even more exacting test required to show the presence of extraordinary circumstances, which requires appellant to show a possibility of injustice so grave as to warrant disregard of usual procedural rules.") (citations and internal quotation marks omitted); *United States v. John*, 597 F.3d 263, 290 (5th Cir. 2010) (Smith, J., dissenting) ("[In the Fifth Circuit,] instead of being narrow, rare, and exceptional, the granting of plain-error relief in sentencing appeals has become commonplace.").

review "is not a run-of-the-mill remedy"[12] but instead a limited exception to the contemporaneous-objection rule—a rule that serves important institutional interests. *Puckett*, 556 U.S. at 135. "No procedural principle is more familiar to this Court than that a constitutional right, or a right of any other sort, may be forfeited . . . by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Olano*, 507 U.S. at 731 (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944)) (internal quotation marks omitted). This rule ensures full development of the record, prevents strategic timing of objections meant to secure a "second bite at the apple," gives incentives for the diligence and zealousness of trial counsel and the defendant, minimizes the "sandbagging" of trial courts, promotes judicial economy by reducing appeals and remand, and safeguards the district court's role as the court of first instance in our federal system. *See Puckett*, 556 U.S. at 134, 140; *John*, 597 F.3d at 290-92 (Smith, J., dissenting).

Our expansive and permissive application of plain-error review undermines each of these values and "drains all content from the doctrine of plain error." *Ellis*, 564 F.3d at 379. "Any unwarranted extension of this exacting definition of plain error would skew the Rule's careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed." *Young*, 470 U.S. at 15 (citation and internal quotation marks omitted). In almost every case in which this court improperly grants relief to forfeited objections, we not only erroneously charge the trial court with seriously affecting the fairness, integrity, and public reputation of judicial proceedings, we ourselves "encourage[] litigants to abuse the judicial process and bestir[] the public to ridicule it." *Johnson v. United States*, 520 U.S. 461, 470; *see also Poitra*, 648 F.3d

---

[12] *Frady*, 456 U.S. at 163 n.14 (quoting *United States v. Gerald*, 624 F.2d 1291, 1299 (5th Cir. 1980)).

No. 11-40632

at 892.  When the court falsely accuses the district court of being a blackened kettle, it itself becomes a pot.

More importantly, given our role as an intermediate appellate court, we must adhere to a stringent application of plain-error review, because it is required by the plain language of the standard announced by the Supreme Court.  We may exercise our discretion to reverse on plain-error review only where the error *seriously* affects the fairness, integrity, or public reputation of judicial proceedings.  Of course, any and every error affects, to some degree, the fairness and integrity of our judicial system.  But we are to reverse only those that *seriously* do so.[13]  Plain errors are those that are "exceptional," *Atkinson*, 297 U.S. at 160, "particularly egregious," and "undermine the fundamental fairness" of our system, *Young*, 470 U.S. at 15-16.  An error that warrants reversal despite the contemporaneous-objection rule is one that, if left uncorrected, would shock the conscience of the common man, serve as a powerful indictment against our system of justice, or seriously call into question the competence or integrity of the district judge.

In many cases, including this one, our court fails to uphold that high standard.  This is nowhere more true than in the context of sentencing.  Since *Olano*, we have reversed at least 146 sentences on plain-error review, finding the fourth

---

[13]  In this regard, the majority is guilty of an inadvertent but telling omission.  The repeated absence of the word "seriously" from its application of the fourth prong to Escalante-Reyes speaks volumes, because it shows that this en banc majority—like the panels of this court in general—does not take "seriously" the word "seriously" in applying the fourth prong.  Thus, the majority begins its fourth-prong analysis by stating, "The fourth prong of plain error asks whether the error affects 'the fairness, integrity, or public reputation of judicial proceedings . . .'" (quoting *Puckett*, 556 U.S. at 135).  Later, in discussing *United States v. Reyna*, 358 F.3d 344, 352 (5th Cir. 2004) (en banc), the majority says that "[w]e found that the error did not affect the 'fairness, integrity, or public reputation of judicial proceedings' . . . ."  And in summarizing its ruling on the fourth prong, the majority again omits "seriously" in concluding that "the district court's repeated emphasis on Escalante-Reyes's need for anger management in prison affected the 'fairness, integrity, or public reputation' of the sentencing proceeding."

No. 11-40632

prong met over 70% of the time it is reached. *See* Appendix A. That is hardly "rare."

It is understandably tempting to say that if a defendant's substantial rights were likely affected by an error at sentencing, the longer deprivation of liberty necessarily and seriously affects the fairness, integrity, or public reputation of judicial proceedings.[14] But such a liberty "interest is always at stake in criminal cases," *Puckett*, 556 U.S. at 142, and an approach that collapses the third and fourth prongs essentially transforms plain-error review into harmless-error review with a shifted burden, "drain[ing] all content from the doctrine of plain error," *Ellis*, 564 F.3d at 379. It "emasculates the plain-error standard of review," making it "weakened to the point of toothlessness." *United States v. Mudekunye*, 646 F.3d 281, 291 (5th Cir. 2011) (Barksdale, J., dissenting).

"[A] plain error affecting substantial rights does not, *without more*, satisfy the *Atkinson* standard, for otherwise the discretion afforded by Rule 52(b) would be illusory." *Olano*, 507 U.S. at 737 (emphasis added). What is more, "[t]he fourth prong is meant to be applied on a case-specific and fact-intensive basis," so a "per se approach" in the sentencing, or any other, context "is flawed." *Puckett*, 556 U.S. at 142 (citation and internal quotation marks omitted). Sadly, time and again, this court has either given the fourth prong little analysis or has assumed it away altogether.[15]

---

[14] Although the majority does not explicitly make this error, they practically read out the fourth prong from the plain-error standard, as pointed out in part II.B, *infra*.

[15] *See, e.g.*, *United States v. Mudekunye*, 646 F.3d 281, 291 (5th Cir. 2011); *United States v. Lopez*, 434 F. App'x 369 (5th Cir. 2011); *United States v. Andino-Ortega*, 608 F.3d 305, 311-12 (5th Cir. 2010) (stating that "because the district court's error clearly affected Andino-Ortega's sentence, we also find that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings"); *United States v. Munoz-Ortenza*, 563 F.3d 112, 116 (5th Cir. 2009); *United States v. Cruz*, 418 F.3d 481, 485 (5th Cir. 2005) ("Because [the defendant] has shown the likelihood that the error in this case increased his sentence, he has shown that the error seriously affects the fairness, integrity, or public reputation of judicial (continued...)

31

No. 11-40632

Beyond all the injury this court's approach does to the law and our system of justice, it adds a fair amount of insult as well. When this court reverses on plain-error review, unless there has been an intervening change of law, it indicts the federal district judge as having made a ruling that seriously affects the fairness, integrity, or public reputation of judicial proceedings. In such cases, we in effect hold as a matter of law that the district judge was "derelict." *Frady*, 456 U.S. at 163. If this court's fourth-prong rulings are to be believed, we have scores of district judges in Texas, Louisiana, and Mississippi who constantly impugn the integrity of our judicial system with incompetent or malicious decisions. By this measure more than half of the district judges in this circuit have, at one time or another, been derelict on the bench, *see* Appendix B; those who have not been so maligned need only spend more time as a judge before they too jeopardize the fairness of the judicial branch, according to this court and as reinforced by the instant en banc declaration.

Take, for example, cases cited in Appendix B. In *United States v. Perez*, 460 F. App'x 294 (5th Cir. 2012) (per curiam), did the panel really mean that Judge George Kazen committed "the most grievous of unnoticed errors"[16] and undermined the integrity of the legal system when he allowed the defendant to allocute on some but not all topics after his attorney was allowed to say anything he wished? In *United States v. Palmer*, 456 F. 3d 484 (5th Cir. 2006), did the panel intend to brand Judge Sim Lake with seriously damaging the reputation of judicial proceedings when he decided that the gun possessed by the defendants was in furtherance of a drug-trafficking crime? In *United States v. Washington*, 442 F. App'x 130 (5th Cir. 2011) (per curiam), did Judge Sarah Vance

---

[15] (...continued)
proceedings.") (citation omitted).

[16] *Robinson*, 627 F.3d at 956.

No. 11-40632

really undermine the integrity of the judiciary or commit a "blockbuster[]" error[17] when she utilized defendant's unobjected-to statement that he had two controlled-substance convictions?[18] In *United States v. Moreno-Florean*, 542 F.3d 445 (5th Cir. 2008), was Judge Kathleen Cordone seriously unfair, offending "core notions of justice,"[19] when she deemed a prior kidnaping conviction a crime of violence where there was no objection? In *United States v. Gordon*, 346 F.3d 135 (5th Cir. 2003) (per curiam), did Judge William Barbour seriously damage the reputation of the American judiciary when he held, on an issue of first impression, that home detention is not a "sentence of imprisonment"?

It is indeed surprising, with this rate of "particularly egregious" errors, that the public has not lost confidence in the federal judicial system altogether. I nonetheless find myself disagreeing that our able district judges have been so derelict, craven, and irresponsible.

B.

Although acknowledging the existence of the fourth prong, the majority regrettably enshrines this court's generous and permissive pattern of reversal on plain-error review: It rules that this case is one in which the court should exercise its discretion in reversing the district judge's error because it seriously affected the fairness, integrity, or public reputation of the judicial system. The majority does so for three reasons.

First, it finds that the fourth prong is met because of a supposed absence of evidence in the record to show that the sentence was "fair." Although the majority does not see the need to justify reversal with specific facts, I disagree,

---

[17] *Taylor*, 54 F.3d at 973.

[18] I admit to having been a member of that panel. *Mea maxima culpa.*

[19] *Gonzalez-Huerta*, 403 F.3d at 739.

because, as the majority acknowledges, "[r]eversal for plain error is necessarily a fact-specific inquiry," and that applies as well to the fourth prong. *Puckett*, 556 U.S. at 142.

Escalante-Reyes pleaded guilty of being found illegally present in the United States less than two months after deportation when he was apprehended during an alien- and drug-smuggling operation. He had been deported for a conviction of aggravated assault with a deadly weapon after chasing down a man with a shovel and swinging it at him, inflicting two seven-inch lacerations. Although initially given only probation, Escalante-Reyes was sentenced to two years in prison after testing positive for cocaine and flouting several other conditions of his probation. And his aggravated assault was not his first run-in with the law: He had been convicted of eight other crimes, including driving while intoxicated, a domestic violence offense in which he dragged his common-law wife across the floor, and a separate assault offense that left his common-law wife "lying in a fetal position, crying, and hiding behind the dresser" after having been seized by the neck and slapped.

There are mitigating circumstances: Escalante-Reyes's common-law wife —an illegal alien whom he has abused on multiple occasions—and two children are in the United States, facts that he gives as his reason for attempting to return to this country. He claims that his wife and children will rejoin him in Mexico after he has finished his sentence, so a shorter sentence would enable him to return to his family more quickly. He also notes that his last criminal offense, the aggravated assault in 2003, is now nine years old (but he was on supervised release for six years until he violated his probation by having used cocaine in 2009, after which he served two years in prison). Thus, not counting the time he was on supervised release and in prison, Escalante-Reyes waited only about two months before committing another crime.

34

No. 11-40632

The district judge—the Honorable Joseph M. Hood[20]—focused on several factors in determining Escalante-Reyes's sentence. First, he noted that the sentencing guideline range was 63-78 months. Second, he spent the bulk of the colloquy focused on Escalante-Reyes's egregious criminal history, especially the aggravated assault and the multiple beatings of his wife. Third, Judge Hood noted, "there's a temper and anger problem here, too. . . . . And it seems to me that that's what we have to get under control. And that's got to be the basis for what good prison will do for this Defendant." Fourth, after Escalante-Reyes's counsel objected to the 60-month sentence as not adequately addressing the 18 U.S.C. § 3553(a) factors, Judge Hood responded, "He just got out of prison. . . . He turns around and comes back right away." The court overruled the objection

---

[20] Judge Hood is a distinguished Senior United States District Judge for the Eastern District of Kentucky. He served for fourteen years as a U.S. Magistrate Judge and has been a district judge for twenty-two years. Since assuming senior status, he has generously volunteered for a program that brings visiting judges to the Southern and Western Districts of Texas to assist in handling the high docket loads caused by drug and illegal-alien offenses.

A press release by the U.S. Attorney's Office for the Southern District of Texas, dated May 21, 2012, shows Judge Hood's continuing valuable service to this circuit as a visiting judge:

> After a lengthy day of hearings before visiting U.S. District Judge Joseph M. Hood, 14 convicted drug traffickers and/or money launderers have now been sentenced to federal prison . . . .Those sentenced today include truck drivers, warehouse employees and others who assisted in supervising and transporting narcotics and/or drug proceeds.

http://www.justice.gov/usao/txs/1News/Releases/2012%20May/120521%20Segovia%20et%20al_print.html (last accessed July 9, 2012).

The result reached by the en banc majority is a prime example of the popular saying that "no good deed goes unpunished." It is unfortunate on many levels that the court labels Judge Hood's sentence to Escalante-Reyes as seriously undermining the fairness, integrity, or public reputation of judicial proceedings. That is hardly the thanks we should give to a dedicated visiting judge—or any other judge—without the most sober consideration of the label we are affixing to his or her actions in imposing sentence. I do not suggest that our review of a sentence should be affected by the identity of the sentencing judge, but a finding that the fourth prong of plain-error review is satisfied has collateral and unintended consequences, one of which is to besmirch and blemish the reputations of able, hard-working district judges.

and imposed a 60-month sentence, which was below the guideline range, below the probation officer's recommendation of 70 months in the presentence report, and well below the 20-year statutory maximum. *See* 8 U.S.C. § 1326(b)(2).

Considering all the circumstances, it is hard to see how Escalante-Reyes's sentence was fundamentally "unfair" or how Judge Hood's "mistake" of only twice referring to rehabilitation,[21] among a list of three other factors, seriously impugns the fairness, integrity, or public reputation of judicial proceedings. Given (1) that Escalante-Reyes's offense was part of a larger alien- and drug-smuggling operation, (2) that it occurred only two months after his deportation, (3) his record of violent crime and domestic abuse, (4) his repeated abuse of cocaine, and (5) his anger-management issues, which justify a longer term of incapacitation for protection of the public and his wife, Judge Hood's imposition of this below-guideline sentence cannot be "seriously" unfair. Despite the extremely difficult task of making our fourth-prong jurisprudence any worse, the majority has reached a new low even for this court by—for the first time as far as I can tell—reversing a *below*-guideline sentence as inherently unfair.

Second, the majority reverses because the government did not satisfy the court that the "'integrity or public reputation' of the judicial proceeding was pro-tected despite the erroneous consideration of Escalante-Reyes's need for anger management treatment in determining the length of sentence."[22] But the majori-ty's approach turns the fourth prong on its head. It assumes that an error always seriously impugns the integrity or public reputation of the judicial sys-

---

[21] Though it is true that the court referred to Escalante-Reyes's anger-management problem a third time, that was in the context of recommending treatment while in prison. This type of statement is not error. *Tapia*, 131 S. Ct. at 2392.

[22] In saying this, the majority deviates subtly from *Olano*. Whereas *Olano* looks to whether the error seriously affects the "integrity or public reputation of judicial *proceedings*" generally, *Olano*, 507 U.S. at 732 (emphasis added), the majority, in addition to omitting the word "seriously," asks only whether the error affects the integrity or public reputation of the specific judicial *proceeding* in this case.

tem unless the government somehow demonstrates that that integrity and reputation are still "protected." Instead, this court should uphold the sentence unless Escalante-Reyes can show a particularly sympathetic case in which the demands of justice so *seriously* undermine the integrity of our system that we are willing to depart from our well-established procedure to correct it.

The majority thereby—alarmingly—*presumes* plain error unless the prevailing party can prove otherwise. The Supreme Court, however, is unequivocal that the burden of proving the fourth prong is on the party seeking reversal—here, Escalante-Reyes. *United States v. Vonn*, 535 U.S. 55, 63 (2002). Further, as demonstrated above, the aggravating aspects of Escalante-Reyes's offense are more than enough to justify his sentence.

It is also worth pointing out that Judge Hood's error was not one concerning core notions of justice, but rather one of statutory interpretation. *Tapia* did not reject imprisonment for purposes of rehabilitation because it violated some fundamental principle of due process and incarceration, but rather because it was not in accordance with 18 U.S.C. § 3582(a).[23] Rehabilitation, for hundreds of years, has been considered a valid reason for imprisonment: For nearly a century before the Sentencing Reform Act ("SRA"), rehabilitation formed the basis for sentencing. *Tapia*, 131 S. Ct. at 2386.

Even though Congress has now largely rejected rehabilitation as a rationale for increasing a sentence, that does not mean that for a hundred years judges have been seriously undermining the integrity and reputation of the judicial system. Neither Congress nor the Court has found that sending convicted felons

---

[23] Although the majority attempts to make much of the error's being incongruent with the "express admonition" of Congress, the issue was less than obvious: The majority of circuits that had ruled on it would have found no error in Escalante-Reyes's sentence before *Tapia*. *See Tapia*, 131 S. Ct. at 2386 n.1 (citing *United States v. Duran*, 37 F.3d 557 (9th Cir. 1994); *United States v. Hawk Wing*, 433 F.3d 622 (8th Cir. 2006); *United States v. Jimenez*, 605 F.3d 415 (6th Cir. 2010)).

to prison for rehabilitation is inherently unjust; to the contrary, Congress found only that prisons could not "rehabilitate individuals on a *routine* basis . . . or that parole officers could [not] determine accurately whether or when a particular prisoner had been rehabilitated." *Id.* at 2387 (citation, internal quotation marks, and alterations omitted) (emphasis added). Indeed, Congress and the Court have explicitly endorsed attempts at rehabilitation. *Id.* at 2392.

Instead of declaring rehabilitation as contrary to the idea of criminal justice, the SRA was designed to minimize indeterminate sentences, decrease sentence disparities, and limit judicial discretion, all the while providing legislative guidance. *Id.* at 2387. Judge Hood did not follow the pre-SRA model of imposing an inordinately long sentence for the purposes of rehabilitating Escalante-Reyes or conferring discretion to release him once rehabilitated; rather, he gave a lenient sentence, considering the need for rehabilitation as one of many factors. Although it is undoubtedly true in hindsight that, in doing so, the court acted contrary to statute, it is equally true that this particular error by no means seriously undermines the integrity or public reputation of our judicial system.[24]

Finally, the majority justifies reversal because of Judge Hood's reliance on anger management as a justification for the sentence, in light of Congress's and the Supreme Court's rejection of that rationale. But the majority's notion merely wads up the first three prongs of plain error review and stuffs them into the empty skin of the fourth prong to give it some sign of life.

There is no doubt the first three prongs are met, otherwise we would not be addressing the fourth—but that is not nearly enough. *Of course* the district court's decision is contrary to *Tapia*, otherwise it wouldn't be error at all. *Of course* the sentencing rationale was contrary to clear—albeit *post-hoc*—Supreme Court precedent, otherwise the error wouldn't be clear or obvious. And *of course*

---

[24] Indeed, if every *Tapia* error would satisfy plain error review, the Court would not have remanded in *Tapia* itself. *See Tapia,* 131 S. Ct. at 2393.

No. 11-40632

Judge Hood relied significantly on an erroneous consideration, otherwise the error wouldn't affect Escalante-Reyes's substantial rights. These rationales, however, are not sufficient to find the fourth prong met. As noted above, even if, *arguendo*, a given error affects to some degree the integrity of the judicial process, we may reverse only the errors that *seriously* do so. The majority, instead, and without admitting it, consigns the fourth prong to oblivion.[25]

In full view of the facts, the question the fourth prong requires us to answer before we exercise our discretion to reverse this below-guideline sentence is this: Does Judge Hood's improper consideration of Escalante-Reyes's rehabilitation needs, among several other legitimate sentencing considerations, seriously affect the fairness, integrity, or public reputation of judicial proceedings? Is this unpreserved, forfeited error so "particularly egregious,"[26] grievous, and serious, and this case so rare and "exceptional,"[27] that we are willing to abrogate our most basic and longstanding rules of procedure to correct it because it generally "undermine[s] the fundamental fairness"[28] of the courts and offends "core notions of justice"?[29] If left uncorrected, would this five-year sentence shock the public's conscience and cause fair-minded men and women to lose confidence in our judicial system? The answer to these questions is "No":

---

[25] That is not to say that the degree to which the second and third prongs have been met never influences a fourth-prong analysis. There may be a case in which, for example, an error that is particularly obvious to the district judge and affects substantial rights to a great degree is thereby likely to meet the fourth prong. But this is not that type of case, nor does the majority argue that it is. The error was not particularly obvious—indeed, all agree the law was unclear—and there is no reason to suppose that on remand the court will impose a substantially different sentence.

[26] *Young*, 470 U.S. at 15.

[27] *Atkinson*, 297 U.S. at 160.

[28] *Young*, 470 U.S. at 16.

[29] *Gonzalez-Huerta*, 403 F.3d at 739.

No. 11-40632

> [E]ven if an increase in a sentence be seen as inevitably 'substantial' in one sense it does not inevitably affect the fairness, integrity, or public reputation of judicial proceedings. To conclude that not correcting the error casts doubt on the fairness, integrity, or public reputation of the proceedings drains all content from the doctrine of plain error.

*Ellis*, 564 F.3d at 378-79.

There are some cases in which we at least arguably may legitimately consider exercising our limited and circumscribed discretion to reverse on plain error review,[30] but *this* error does not offend "core notions of justice." *Gonzalez-Huerta*, 403 F.3d at 739. The majority abuses that discretion by reversing the sentence, which does not "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Puckett*, 556 U.S. at 135 (citation and alterations omitted). The majority does not take the word "seriously" seriously enough.

**\* \* \* \* \* \* \* \* \* \***

---

[30] *See, e.g.*, *United States v. Broussard*, 669 F.3d 537, 555 (5th Cir. 2012) (applying fourth prong correctly where the district court's error yielded a sentence four times as long as the guidelines—40 years when the guidelines showed 10); *United States v. Garcia-Quintanilla*, 574 F.3d 295, 304 (5th Cir. 2009) (finding fourth prong satisfied where the district court's mistaken belief that the sentence could be suspended later for cooperation led to a sentence far beyond what the court intended and eight times the top of the guideline range); *United States v. Williamson*, 183 F.3d 458, 464 (5th Cir. 1999) (concluding that fourth prong was met where a sentence twice the proper maximum—30 years instead of 15—was imposed, and correcting it required neither a hearing nor introduction of new evidence).

No. 11-40632

## Appendix A

*Fifth Circuit Cases Applying the Fourth Prong*
(Sentencing cases are denoted with an asterisk.)

Fifth Circuit cases in which plain error has been found:
*United States v. Beasley*, 2012 WL 2504996 (5th Cir. June 27, 2012)\*;
*United States v. Rodriguez*, 2012 WL 2369333 (5th Cir. June 22, 2012)\*;
*United States v. Herrera*, 466 F. App'x 409 (5th Cir. 2012)\*;
*United States v. Broussard*, 669 F.3d 537 (5th Cir. 2012)\*;
*United States v. Perez*, 460 F. App'x 294 (5th Cir. 2012)\*;
*United States v. Martinez*, 466 F. App'x 357 (5th Cir. 2012)\*;
*United States v. Trevino-Rodriguez*, 463 F. App'x 305 (5th Cir. 2012)\*;
*United States v. Hudson*, 457 F. App'x 417 (5th Cir. 2012)\*;
*United States v. Alegria-Alvarez*, No. 10-10357, 2012 WL 918632
      (5th Cir. Mar. 20, 2012) (unpublished)\*;
*United States v. Brunson*, 422 F. App'x 353 (5th Cir. 2012)\*;
*United States v. Phillips*, 415 F. App'x 557 (5th Cir. 2012)\*;
*United States v. Juarez-Gonzalez*, 451 F. App'x 387 (5th Cir. 2011)\*;
*United States v. Aguilar*, 645 F.3d 319 (5th Cir. 2011);
*United States v. Dolic*, 439 F. App'x 425 (5th Cir. 2011)\*;
*United States v. Segura-Sanchez*, 452 F. App'x 471 (5th Cir. 2011)\*;
*United States v. Lopez*, 434 F. App'x 369 (5th Cir. 2011)\*;
*United States v. Mudekunye*, 646 F.3d 281 (5th Cir. 2011)\*;
*United States v. Graves*, 409 F. App'x 780 (5th Cir. 2011)\*;
*United States v. Aguilera-DeLeon*, 436 F. App'x 333 (5th Cir. 2011)\*;
*United States v. Watkins*, 428 F. App'x 343 (5th Cir. 2011)\*;
*United States v. Washington*, 442 F. App'x 130 (5th Cir. 2011)\*;
*United States v. Garcia-Paulin*, 627 F.3d 127 (5th Cir. 2010);
*United States v. Williams*, 602 F.3d 313 (5th Cir. 2010)\*;
*United States v. Cavazos-Rodriguez*, 400 F. App'x 935 (5th Cir. 2010)\*;
*United States v. Andino-Ortega*, 608 F.3d 305 (5th Cir. 2010)\*;
*United States v. Ortuno-Santana*, 372 F. App'x 533 (5th Cir. 2010)\*;
*United States v. John*, 597 F.3d 263 (5th Cir. 2010)\*;
*United States v. McCrumby*, 402 F. App'x 961 (5th Cir. 2010);
*United States v. Taylor*, 435 F. App'x 294 (5th Cir. 2010)\*;

No. 11-40632

*United States v. Starnes*, 378 F. App'x 421 (5th Cir. 2010)*;

*United States v. Self*, 596 F.3d 245 (5th Cir. 2010)*;

*United States v. McCann*, 613 F.3d 486 (5th Cir. 2010)*;

*Richard v. Martin*, 390 F. App'x 323 (5th Cir. 2010);

*United States v. Garcia-Quintanilla*, 574 F.3d 295 (5th Cir. 2009)*;

*United States v. Munoz-Ortega*, 563 F.3d 112 (5th Cir. 2009)*;

*United States v. Diaz-Sanchez*, 307 F. App'x 797 (5th Cir. 2009)*;

*United States v. Villareal-Rodriguez*, 356 F. App'x 759 (5th Cir. 2009)*;

*United States v. Avila-Cortez*, 582 F.3d 602 (5th Cir. 2009)*;

*United States v. Hernandez-Muniz*, 354 F. App'x 133 (5th Cir. 2009)*;

*United States v. Bellorin-Torres*, 341 F. App'x 19 (5th Cir. 2009)*;

*United States v. Whitfield*, 590 F.3d 325 (5th Cir. 2009);

*United States v. Adams*, 314 F. App'x 633 (5th Cir. 2009);

*United States v. Argumedo-Perez*, 326 F. App'x 293 (5th Cir. 2009)*;

*Doolittle v. Holmes*, 306 F. App'x 293 (5th Cir. 2009);

*United States v. Sandlin*, 589 F.3d 749 (5th Cir. 2009)*;

*United States v. Sealed Appellant 1*, 591 F.3d 812 (5th Cir. 2009)*;

*United States v. Arami*, 536 F.3d 479 (5th Cir. 2008);

*United States v. Williams*, 277 F. App'x 365 (5th Cir. 2008)*;

*United States v. Hernandez*, 299 F. App'x 413 (5th Cir. 2008)*;

*United States v. Gonzalez-Terrazas*, 529 F.3d 293 (5th Cir. 2008)*;

*United States v. Moreno-Florean*, 542 F.3d 445 (5th Cir. 2008)*;

*United States v. Martinez*, 301 F. App'x 320 (5th Cir. 2008)*;

*United States v. Arreola-Trasvina*, 284 F. App'x 191 (5th Cir. 2008)*;

*United States v. Coleman*, 280 F. App'x 388 (5th Cir. 2008)*;

*United States v. Sanchez*, 527 F.3d 463 (5th Cir. 2008)*;

*United States v. Baker*, 538 F.3d 324 (5th Cir. 2008);

*United States v. Gracia*, 522 F.3d 597 (5th Cir. 2008)*;

*United States v. Carrizales-Jaramillo*, 303 F. App'x 215 (5th Cir. 2008)*;

*United States v. Jimenez*, 275 F. App'x 433 (5th Cir. 2008);

*United States v. Sanchez-Vasquez*, 2008 WL 2325633
      (5th Cir. June 6, 2008) (unpublished)*;

*United States v. Ramirez-Cuadra*, 283 F. App'x 248 (5th Cir. 2008)*;

*United States v. Garcia-Vazquez*, 287 F. App'x 417 (5th Cir. 2008)*;

*United States v. Rojas-Luna*, 522 F.3d 502 (5th Cir. 2008)*;

42

No. 11-40632

*United States v. Ogba*, 526 F.3d 214 (5th Cir. 2008)*;

*United States v. Roldan-Olivares*, 242 F. App'x 192 (5th Cir. 2007)*;

*United States v. Gonzalez-Mercado*, 221 F. App'x 356 (5th Cir. 2007)*;

*United States v. Dentler*, 492 F.3d 306 (5th Cir. 2007)*;

*United States v. Lister*, 229 F. App'x 334 (5th Cir. 2007)*;

*United States v. Maturin*, 488 F.3d 657 (5th Cir. 2007);

*United States v. Thompson*, 254 F. App'x 278 (5th Cir. 2007)*;

*United States v. Chinchilla-Galvan*, 242 F. App'x 228 (5th Cir. 2007)*;

*United States v. Lozoya*, 232 F. App'x 431 (5th Cir. 2007)*;

*United States v. Martinez-Zamorano*, 228 F. App'x 497 (5th Cir. 2007)*;

*United States v. Castaneda-Baltazar*, 239 F. App'x 900 (5th Cir. 2007)*;

*United States v. Ortiz*, 252 F. App'x 664 (5th Cir. 2007)*;

*United States v. Landeros-Reyes*, 229 F. App'x 302 (5th Cir. 2007)*;

*United States v. Duque-Hernandez*, 227 F. App'x 326 (5th Cir. 2007)*;

*United States v. Bustamante-Castillo*, 214 F. App'x 377 (5th Cir. 2007)*;

*United States v. Gonzales*, 484 F.3d 712 (5th Cir. 2007)*;

*United States v. Willingham*, 497 F.3d 541 (5th Cir. 2007)*;

*United States v. Gonzales*, 236 F. App'x 1 (5th Cir. 2007)*;

*United States v. Aguilar-Uriostigue*, 237 F. App'x 938 (5th Cir. 2007)*;

*United States v. Austin*, 479 F.3d 363 (5th Cir. 2007)*;

*United States v. Eugenio-Salvador*, 207 F. App'x 409 (5th Cir. 2007)*;

*Liner v. Hosp. Serv. Dist. No. 1 of Jefferson Parish*, 230 F. App'x 361 (5th Cir. 2007);

*United States v. Coil*, 442 F.3d 912 (5th Cir. 2006)*;

*United States v. Franklin*, 2006 WL 1049096
        (5th Cir. Apr. 21, 2006) (unpublished)*;

*United States v. Loston*, 208 F. App'x 340 (5th Cir. 2006)*;

*United States v. Meraz-Enriquez*, 442 F.3d 331 (5th Cir. 2006)*;

*United States v. Gallegos*, 161 F. App'x 899 (5th Cir. 2006)*;

*United States v. Palmer*, 456 F.3d 484 (5th Cir. 2006);

*United States v. Sanchez-Navarro*, 169 F. App'x 899 (5th Cir. 2006)*;

*United States v. Denson*, 183 F. App'x 411 (5th Cir. 2006)*;

*United States v. Taylor*, 187 F. App'x 362 (5th Cir. 2006)*;

*United States v. Severin*, 221 F. App'x 299 (5th Cir. 2006)*;

*United States v. Montes-Nunez*, 155 F. App'x 154 (5th Cir. 2005)*;

*United States v. Talavera-Rosas,* 153 F. App'x 932 (5th Cir. 2005)*;

43

No. 11-40632

*United States v. Hernandez-Juarez*, 138 F. App'x 640 (5th Cir. 2005)\*;

*United States v. Pennell*, 409 F.3d 240 (5th Cir. 2005)\*;

*United States v. Pea*, 131 F. App'x 975 (5th Cir. 2005)\*;

*United States v. Cruz*, 418 F.3d 481 (5th Cir. 2005)\*;

*United States v. Sanchez-Torres*, 136 F. App'x 644 (5th Cir. 2005)\*;

*United States v. Moncrief*, 150 F. App'x 341 (5th Cir. 2005)\*;

*United States v. Fowler*, 136 F. App'x 620 (5th Cir. 2005)\*;

*United States v. Munoz*, 408 F.3d 222 (5th Cir. 2005)\*;

*United States v. Villegas,* 404 F.3d 355 (5th Cir. 2005)\*;

*United States v. de Jesus-Batres*, 410 F.3d 154 (5th Cir. 2005)\*;

*United States v. Dunn*, 142 F. App'x 822 (5th Cir. 2005)\*;

*United States v. Gonzalez-Borjas*, 125 F. App'x 556 (5th Cir. 2005)\*;

*United States v. Garza-Lopez*, 410 F.3d 268 (5th Cir. 2005)\*;

*United States v. Hewitt*, 145 F. App'x 876 (5th Cir. 2005)\*;

*Septimus v. Univ. of Hous.*, 399 F.3d 601 (5th Cir. 2005);

*United States v. Monreal-Monreal*, 134 F. App'x 726 (5th Cir. 2005)\*;

*United States v. Gonzalez-Chavez*, 432 F.3d 334 (5th Cir. 2005)\*;

*United States v. Alfaro*, 408 F.3d 204 (5th Cir. 2005)\*;

*United States v. Garcia*, 416 F.3d 440 (5th Cir. 2005)\*;

*United States v. Rosa-Mascorro*, 143 F. App'x 621 (5th Cir. 2005)\*;

*United States v. Inman*, 411 F.3d 591 (5th Cir. 2005)\*;

*United States v. Starnes*, 157 F. App'x 687 (5th Cir. 2005)\*;

*United States v. Vasquez*, 108 F. App'x 979 (5th Cir. 2004)\*;

*United States v. Brownlow*, 87 F. App'x 337 (5th Cir. 2004)\*;

*United States v. Lopez-Hernandez*, 112 F. App'x 984 (5th Cir. 2004)\*;

*United States v. Insaulgarat*, 378 F.3d 456 (5th Cir. 2004)\*;

*United States v. Matute-Galdamez*, 111 F. App'x 264 (5th Cir. 2004)\*;

*United States v. Aguilar-Delgado*, 120 F. App'x 522 (5th Cir. 2004)\*;

*United States v. Garcia-Costilla*, 113 F. App'x 616 (5th Cir. 2004)\*;

*United States v. Palomares-Candela*, 104 F. App'x 957 (5th Cir. 2004)\*;

*United States v. Espinoza*, 67 F. App'x 252 (5th Cir. 2003)\*;

*United States v. Luna-Montoya*, 80 F. App'x 334 (5th Cir. 2003)\*;

*United States v. Griffin*, 324 F.3d 330 (5th Cir. 2003);

*United States v. Gordon*, 346 F.3d 135 (5th Cir. 2003)\*;

*Anderson v. Siemens Corp.*, 335 F.3d 466 (5th Cir. 2003);

No. 11-40632

*United States v. Collier*, 75 F. App'x 256 (5th Cir. 2003)*;

*United States v. Reyes*, 300 F.3d 555 (5th Cir. 2002)*;

*United States v. Moreci*, 283 F.3d 293 (5th Cir. 2002)*;

*United States v. Gracia-Cantu*, 302 F.3d 308 (5th Cir. 2002)*;

*United States v. Avants*, 278 F.3d 510 (5th Cir. 2002);

*United States v. Davis*, 54 F. App'x 793 (5th Cir. 2002)*;

*United States v. Hunter*, 275 F.3d 42 (5th Cir. 2001) (unpublished)*;

*United States v. Gonzalez*, 259 F.3d 355 (5th Cir. 2001)*;

*United States v. Alarcon*, 261 F.3d 416 (5th Cir. 2001)*;

*United States v. Coleman*, 250 F.3d 738 (5th Cir. 2001) (unpublished)*;

*United States v. Vasquez-Zamora*, 253 F.3d 211 (5th Cir. 2001)*;

*United States v. Moore*, 281 F.3d 1279 (5th Cir. 2001) (unpublished)*;

*United States v. Hilario-Carpio*, 275 F.3d 1083 (5th Cir. 2001) (unpublished)*;

*United States v. Randle*, 259 F.3d 319 (5th Cir. 2001)*;

*United States v. Villareal*, 253 F.3d 831 (5th Cir. 2001)*;

*United States v. Johnson*, 248 F.3d 1138 (5th Cir. 2001) (unpublished)*;

*United States v. McWaine*, 243 F.3d 871 (5th Cir. 2001)*;

*Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458 (5th Cir. 2001);

*United States v. Anderson*, 275 F.3d 42 (5th Cir. 2001) (unpublished)*;

*United States v. Wiltz*, 254 F.3d 1080 (5th Cir. 2001) (unpublished)*;

*United States v. Ellis*, 248 F.3d 1139 (5th Cir. 2001) (unpublished)*;

*United States v. Montalvo-Torres*, 240 F.3d 1073 (5th Cir. 2000) (unpublished);

*United States v. Carrizales-Cedillo*, 228 F.3d 408 (5th Cir. 2000) (unpublished);

*United States v. Angeles-Mascote*, 206 F.3d 529 (5th Cir. 2000);

*United States v. Jones*, 207 F.3d 658 (5th Cir. 2000) (unpublished)*;

*Brown v. Bryan Cnty., Okla.*, 219 F.3d 450 (5th Cir. 2000);

*United States v. Johnson*, 194 F.3d 657 (5th Cir. 1999);

*United States v. Williamson*, 183 F.3d 458 (5th Cir. 1999)*;

*Haggerty v. Johnson*, 204 F.3d 1114 (5th Cir. 1999) (unpublished);

*United States v. Winter*, 189 F.3d 467 (5th Cir. 1999) (unpublished);

*Nero v. Indus. Molding Corp.*, 167 F.3d 921 (5th Cir. 1999);

*United States v. Myers*, 198 F.3d 160 (5th Cir. 1999);

*United States v. Saenz*, 134 F.3d 697 (5th Cir. 1998);

*United States v. Wilson*, 116 F.3d 1066 (5th Cir. 1997)*;

*Crawford v. Falcon Drilling Co.*, 131 F.3d 1120 (5th Cir. 1997);

45

No. 11-40632

*Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702 (5th Cir. 1997);

*United States v. Coscarelli*, 105 F.3d 984 (5th Cir. 1997)\*;

*United States v. Kubosh*, 120 F.3d 47 (5th Cir. 1997)\*;

*Baldwin v. Rollo*, 132 F.3d 1455 (5th Cir. 1997) (unpublished);

*United States v. Coleman*, 98 F.3d 1339 (5th Cir. 1996) (unpublished)\*;

*United States v. Aderholt*, 87 F.3d 740 (5th Cir. 1996)\*;

*United States v. McGuire*, 1996 WL 125025 (5th Cir. Mar. 20, 1996) (unpublished);

*United States v. McGuire*, 79 F.3d 1396 (5th Cir. 1996);

*United States v. Franks*, 46 F.3d 402 (5th Cir. 1995)\*;

*United States v. Cabral-Castillo*, 35 F.3d 182 (5th Cir. 1994)\*;

*United States v. Knowles*, 29 F.3d 947 (5th Cir. 1994)\*;

*United States v. Hoster*, 988 F.2d 1374 (5th Cir. 1993)\*;

*United States v. Igbingie*, 5 F.3d 1494 (5th Cir. 1993).


Fifth Circuit cases in which the fourth prong has been considered, but plain error has not been found:

*United States v. Zaleta*, 458 F. App'x 369 (5th Cir. 2012)\*;

*United States v. Dimas-Flores*, 458 F. App'x 366 (5th Cir. 2012)\*;

*United States v. Baldon*, 457 F. App'x 393 (5th Cir. 2012)\*;

*United States v. Asencio-Perdomo*, 674 F.3d 444 (5th Cir. 2012)\*;

*United States v. Chavez-Hernandez*, 671 F.3d 494 (5th Cir. 2012)\*;

*United States v. Soloranzo*, 449 F. App'x 412 (5th Cir. 2011)\*;

*United States v. Barragan-Espino*, 448 F. App'x 472 (5th Cir. 2011)\*;

*United States v. Legg*, 439 F. App'x 312 (5th Cir. 2011)\*;

*United States v. Dolenz*, 413 F. App'x 703 (5th Cir. 2011)\*;

*United States v. Seale*, 600 F.3d 473 (5th Cir. 2010)\*;

*United States v. Lopez*, 392 F. App'x 245 (5th Cir. 2010);

*United States v. Davis*, 602 F.3d 643 (5th Cir. 2010)\*;

*United States v. Williams*, 620 F.3d 483 (5th Cir. 2010)\*;

*United States v. Cuevas-Jacome*, 312 F. App'x 680 (5th Cir. 2009)\*;

*United States v. Whitelaw*, 580 F.3d 256 (5th Cir. 2009)\*;

*United States v. Prather*, 312 F. App'x 705 (5th Cir. 2009)\*;

*United States v. Blanco-Perez*, 310 F. App'x 622 (5th Cir. 2009)\*;

*United States v. Ellis*, 564 F.3d 370 (5th Cir. 2009)\*;

*United States v. Brewster*, 282 F. App'x 339 (5th Cir. 2008);

46

No. 11-40632

*United States v. Garcia-Miranda*, 261 F. App'x 679 (5th Cir. 2008)*;

*United States v. Williams*, 277 F. App'x 472 (5th Cir. 2008)*;

*United States v. Martinez-Rosas*, 215 F. App'x 381 (5th Cir. 2007);

*United States v. Jones*, 489 F.3d 679 (5th Cir. 2007)*;

*United States v. Magwood*, 445 F.3d 826 (5th Cir. 2006)*;

*United States v. Duarte-Juarez*, 441 F.3d 336 (5th Cir. 2006)*;

*United States v. Perez*, 179 F. App'x 234 (5th Cir. 2006)*;

*United States v. Smith*, 110 F. App'x 380 (5th Cir. 2004)*;

*United States v. Reyna*, 358 F.3d 344 (5th Cir. 2004)*;

*United States v. Martinez-Mendez*, 102 F. App'x 428 (5th Cir. 2004)*;

*United States v. del Bosque*, 86 F. App'x 726 (5th Cir. 2004)*;

*United States v. de Anda-Duenez*, 96 F. App'x 197 (5th Cir. 2004)*;

*United States v. Castillo*, 386 F.3d 632 (5th Cir. 2004)*;

*Delgado v. Reef Resort Ltd.*, 364 F.3d 642 (5th Cir. 2004);

*United States v. Spooner*, 117 F. App'x 357 (5th Cir. 2004)*;

*United States v. Enriquez*, 61 F. App'x 120 (5th Cir. 2003);

*United States v. Mendoza-Gonzalez*, 318 F.3d 663 (5th Cir. 2003)*;

*United States v. Becera-Lopez*, 51 F. App'x 482 (5th Cir. 2002)*;

*United States v. Longoria*, 298 F.3d 367 (5th Cir. 2002)*;

*United States v. Murray,* 37 F. App'x 712 (5th Cir. 2002)*;

*United States v. Randle*, 304 F.3d 373 (5th Cir. 2002)*;

*United States v. Rivera*, 295 F.3d 461 (5th Cir. 2002);

*United States v. Gutierrez*, 250 F.3d 739 (5th Cir. 2001) (unpublished)*;

*United States v. Flores*, 281 F.3d 1279 (5th Cir. 2001) (unpublished)*;

*United States v. Garcia-Flores*, 246 F.3d 451 (5th Cir. 2001);

*United States v. Virgen-Moreno*, 265 F.3d 276 (5th Cir. 2001);

*United States v. Daniels*, 252 F.3d 411 (5th Cir. 2001)*;

*United States v. Miranda*, 248 F.3d 434 (5th Cir. 2001)*;

*United States v. Thompson*, 253 F.3d 700 (5th Cir. 2001) (unpublished)*;

*United States v. Jacquez*, 212 F.3d 595 (5th Cir. 2000) (unpublished)*;

*United States v. Rios-Quintero*, 204 F.3d 214 (5th Cir. 2000);

*Gamboa v. Henderson*, 240 F.3d 1074 (5th Cir. 2000) (unpublished);

*United States v. Evans*, 224 F.3d 765 (5th Cir. 2000) (unpublished)*;

*United States v. Branam*, 231 F.3d 931 (5th Cir. 2000);

*United States v. Hampton*, 181 F.3d 96 (5th Cir. 1999) (unpublished);

47

No. 11-40632

*United States v. Sandoval*, 203 F.3d 828 (5th Cir. 1999) (unpublished)*;

*United States v. Cordero-Godinez*, 176 F.3d 479 (5th Cir. 1999) (unpublished)*;

*United States v. Muhammad*, 165 F.3d 327 (5th Cir. 1999);

*United States v. Harris*, 104 F.3d 1465 (5th Cir. 1997);

*United States v. Blocker*, 104 F.3d 720 (5th Cir. 1997);

*United States v. Sauls*, 121 F.3d 704 (5th Cir. 1997)*;

*United States v. Waldron*, 118 F.3d 369 (5th Cir. 1997);

*United States v. Campbell*, 95 F.3d 52 (5th Cir. 1996);

*United States v. Upton*, 91 F.3d 677 (5th Cir. 1996);

*United States v. Reyes*, 102 F.3d 1361 (5th Cir. 1996);

*United States v. Orellana*, 81 F.3d 154 (5th Cir. 1996)*;

*United States v. Reve*, 51 F.3d 1045 (5th Cir. 1995) (unpublished)*;

*United States v. Clark*, 67 F.3d 1154 (5th Cir. 1995);

*Peaches Entm't Corp. v. Entm't Repertoire Assocs., Inc.*, 62 F.3d 690 (5th Cir. 1995);

*United States v. Rodriguez*, 15 F.3d 408 (5th Cir. 1994)*;

*United States v. Miro*, 29 F.3d 194 (5th Cir. 1994)*.


\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


## Appendix B
*Current District Judges Within the Fifth Circuit*
*Who Have Been Reversed on Plain Error*
(One case shown for each judge.)

Southern District of Texas:

*United States v. Perez*, 460 F. App'x 294 (5th Cir. 2012) (Kazen, J.);

*United States v. Dolic*, 439 F. App'x 425 (5th Cir. 2011) (Hughes, J.);

*United States v. Lopez*, 434 F. App'x 369 (5th Cir. 2011) (Hanen, J.);

*United States v. Aguilar*, 645 F.3d 319 (5th Cir. 2011) (Jack, J.);

*United States v. Villareal-Rodriguez*, 356 F. App'x 759 (5th Cir. 2009) (Rainey, J.);

*United States v. Avila-Cortez*, 582 F.3d 602 (5th Cir. 2009) (Head, J.);

*United States v. Rojas-Luna*, 522 F.3d 502 (5th Cir. 2008) (Alvarez, J.);

*United States v. Castaneda-Baltazar*, 239 F. App'x 900 (5th Cir. 2007) (Marmolejo, J.)*;

*United States v. Palmer*, 456 F.3d 484 (5th Cir. 2006) (Lake, J.);

*United States v. Gonzalez-Chavez*, 432 F.3d 334 (5th Cir. 2005) (Ellison, J.);

No. 11-40632

*United States v. Moncrief*, 150 F. App'x 341 (5th Cir. 2005) (Rosenthal, J.);

*United States v. Cruz*, 418 F.3d 481 (5th Cir. 2005) (Tagle, J.);

*United States v. Garcia*, 416 F.3d 440 (5th Cir. 2005) (Crane, J.);

*United States v. Garza-Lopez*, 410 F.3d 268 (5th Cir. 2005) (Hinojosa, J.);

*United States v. Villegas,* 404 F.3d 355 (5th Cir. 2005) (Hoyt, J.);

*Septimus v. Univ. of Hous.*, 399 F.3d 601 (5th Cir. 2005) (Gilmore, J.);

*United States v. Lopez-Hernandez*, 112 F. App'x 984 (5th Cir. 2004) (Harmon, J.);

*United States v. Griffin*, 324 F.3d 330 (5th Cir. 2003) (Atlas, J.);

*Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702 (5th Cir. 1997) (Hittner, J.);

*United States v. Aderholt*, 87 F.3d 740 (5th Cir. 1996) (Werlein, J.).


Eastern District of Texas:

*United States v. Self*, 596 F.3d 245 (5th Cir. 2010) (Heartfield, J.);

*United States v. Sandlin*, 589 F.3d 749 (5th Cir. 2009) (Schell, J.).


Western District of Texas:

*United States v. Garcia-Paulin*, 627 F.3d 127 (5th Cir. 2010) (Junell, J.);

*United States v. Williams*, 602 F.3d 313 (5th Cir. 2010) (Briones, J.);

*United States v. Garcia-Quintanilla*, 574 F.3d 295 (5th Cir. 2009)
      (Martinez, J.) (unpublished);

*United States v. Hernandez*, 299 F. App'x 413 (5th Cir. 2008) (Ludlum, J.);

*United States v. Moreno-Florean*, 542 F.3d 445 (5th Cir. 2008) (Cardone, J.);

*United States v. Arami*, 536 F.3d 479 (5th Cir. 2008) (Sparks, J.);

*United States v. Dentler*, 492 F.3d 306 (5th Cir. 2007) (Biery, J.);

*United States v. Coil*, 442 F.3d 912 (5th Cir. 2006) (Hudspeth, J.);

*United States v. Johnson*, 194 F.3d 657 (5th Cir. 1999) (Smith, J.);

*United States v. Franks*, 46 F.3d 402 (5th Cir. 1995) (Nowlin, J.).


Northern District of Texas:

*United States v. Graves*, 409 F. App'x 780 (5th Cir. 2011) (Lindsay, J.);

*United States v. Mudekunye*, 646 F.3d 281 (5th Cir. 2011) (O'Connor, J.);

*United States v. John*, 597 F.3d 263 (5th Cir. 2010) (Solis, J.);

*United States v. Inman*, 411 F.3d 591 (5th Cir. 2005) (Means, J.);

*Anderson v. Siemens Corp.*, 335 F.3d 466 (5th Cir. 2003) (Lynn, J.);

*Nero v. Indus. Molding Corp.*, 167 F.3d 921 (5th Cir. 1999) (Cummings, J.);

49

No. 11-40632

*United States v. Knowles*, 29 F.3d 947 (5th Cir. 1994) (McBryde, J.).

Eastern District of Louisiana:

*United States v. Washington*, 442 F. App'x 130 (5th Cir. 2011) (Vance, J.);

*United States v. McCann*, 613 F.3d 486 (5th Cir. 2010) (Fallon, J.);

*Richard v. Martin*, 390 F. App'x 323 (5th Cir. 2010) (Africk, J.);

*United States v. Sealed Appellant 1*, 591 F.3d 812 (5th Cir. 2009) (McNamara, J.);

*United States v. Severin*, 221 F. App'x 299 (5th Cir. 2006) (Lemelle, J.);

*United States v. Ellis*, 248 F.3d 1139 (5th Cir. 2001) (Barbier, J.) (unpublished).

Western District of Louisiana:

*United States v. Broussard*, 669 F.3d 537 (5th Cir. 2012) (Haik, J.);

*United States v. Phillips*, 415 F. App'x 557 (5th Cir. 2012) (Minaldi, J.);

*United States v. Sanchez*, 527 F.3d 463 (5th Cir. 2008) (Melancon, J.);

*United States v. Loston*, 208 F. App'x 340 (5th Cir. 2006) (Hicks, J.);

*United States v. Wilson*, 116 F.3d 1066 (5th Cir. 1997) (Walter, J.).

Middle District of Louisiana:

*United States v. Watkins*, 428 F. App'x 343 (5th Cir. 2011) (Brady, J.);

*United States v. Austin*, 479 F.3d 363 (5th Cir. 2007) (Polozola, J.).

Southern District of Mississippi:

*United States v. Adams*, 314 F. App'x 633 (5th Cir. 2009) (Jordan, J.);

*United States v. Whitfield*, 590 F.3d 325 (5th Cir. 2009) (Wingate, J.);

*United States v. Gordon*, 346 F.3d 135 (5th Cir. 2003) (Barbour, J.);

*United States v. McGuire*, 79 F.3d 1396 (5th Cir. 1996) (Bramlette, J.).

Northern District of Mississippi:

*United States v. Starnes*, 378 F. App'x 421 (5th Cir. 2010) (Mills, J.);

*United States v. Myers*, 198 F.3d 160 (5th Cir. 1999) (Biggers, J.)

*United States v. Beasley*, 2012 WL 2504996 (5th Cir. June 27, 2012) (Aycock, J.).

No. 11-40632

EMILIO M. GARZA, Circuit Judge, with whom JONES, Chief Judge, and KING, SMITH, and CLEMENT, Circuit Judges, join, dissenting:

The majority inverts the most basic rules of trial practice and turns them on their collective heads. The majority holds that a trial practitioner who failed to object and specify the grounds for his objection can still take advantage of a change in the law on appeal, under a plain error analysis, even though the existence of error was unclear at trial. The majority justifies its holding by asserting that bending the rule of forfeiture in such cases is necessary to prevent grave injustice. But while the Supreme Court has recognized two limited exceptions to the forfeiture rule, the Court's reasons for doing so share nothing in common with the exception created by the majority in this case. Instead, the majority's reasoning merely amounts to an attack on the wisdom of Rule 52(b)'s plainness requirement. I dissent.

A

The contemporaneous-objection rule provides that a litigant must raise an objection in the trial court and state the specific grounds for that objection in order to preserve error. *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009). If a litigant fails to preserve error in the trial court, the rule of forfeiture generally precludes it from claiming error on appeal. *United States v. Olano*, 507 U.S. 725, 731 (1993).

Federal courts consistently apply these two most basic rules of error preservation, and they have been codified throughout the Federal Rules of Procedure and Evidence. The Supreme Court has long held that "'[n]o procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'" *Id.* (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944)). We have followed suit, holding that "[a] party must raise

51

No. 11-40632

a claim of error with the district court in such a manner so that the district court may correct itself and thus, obviate the need for our review." *Mondragon-Santiago*, 564 F.3d at 361 (quoting *United States v. Rodriguez*, 15 F.3d 408, 414 (5th Cir. 1994)).

Federal Rule of Criminal Procedure 51(b) codifies these principles for federal criminal cases. "Rule 51(b) tells parties how to preserve claims of error: 'by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection.'" *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting FED. R. CRIM. P. 51(b)). In federal criminal cases, "[f]ailure to abide by this contemporaneous-objection rule ordinarily precludes the raising on appeal of the unpreserved claim of trial error." *Id.* (citing *United States v. Young*, 470 U.S. 1, 15 & n.12 (1985)). The Rules of Criminal Procedure also specifically apply these basic rules of error preservation to objections to jury instructions. FED. R. CRIM. P. 30 ("A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate. . . . Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b).").[1]

Accordingly, the contemporaneous-objection rule requires parties to preserve their claims of error in the district court; if a party fails to abide by this

---

[1] The Federal Rules of Civil Procedure similarly apply these basic rules to challenges to jury instructions. Rule 51 of the Rules of Civil Procedure "requires a party to object to jury instructions in order to preserve a claim of error for appeal." *Jimenez v. Wood County, Tex.*, 660 F.3d 841, 844 (5th Cir. 2011) (en banc). Rule 51 further provides that "an objection must be made 'on the record' and must state 'distinctly the matter objected to and the grounds for the objection.'" *Id.* at 844–45 (quoting FED. R. CIV. P. 51(c)(1)).

The Federal Rules of Evidence also incorporate the basic rules. *See United States v. Seale*, 600 F.3d 473, 485 (5th Cir. 2010) ("Fed. R. Evid. 103(a)(1) and the cases interpreting that rule establish that when the objection is not specific as to the legal basis for the objection, the error is not preserved and can only be reviewed for plain error.").

rule, the forfeiture rule will ordinarily preclude it from raising on appeal any unpreserved claim of trial error. *Puckett*, 556 U.S. at 135.

## B

There is one important, though narrow, exception to these basic rules in federal criminal cases. Specifically, Federal Rule of Criminal Procedure 52(b) "recognizes a limited exception to" the preclusive effect of failing to preserve error at trial. *Id.* Rule 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." The authority Rule 52(b) grants to appellate courts is "circumscribed," as it requires that there was an "error" that was "plain" and "affect[s] substantial rights." *Olano*, 507 U.S. at 732. Even "if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett*, 556 U.S. at 135 (citation and internal quotation marks omitted) (alteration in original).

The Supreme Court has interpreted Rule 52(b) to excuse a litigant's failure to comply with the contemporaneous-objection rule in only two types of cases. Here, however, the majority has interpreted Rule 52(b) to create an exception to the otherwise preclusive effect of such a failure in a third category of cases. Specifically, the majority concludes that when the law at the time of trial is unsettled, but becomes clear while the case is pending on appeal, we should assess whether the district court's error was plain under Rule 52(b) based on the law at the time of appeal. The majority offers two primary justifications for its holding: one based in law, the other grounded in policy. When subjected to scrutiny, however, neither of the majority's rationales persuades, and it becomes clear that the majority has simply created a new form of "plain error" to serve its own conception of "justice."

1

The chief legal justification for the majority's holding is that a time-of-appeal rule will further the purposes of plain error review. In support, the majority cites authority from our sister circuits providing that "the focus of plain error review should be 'whether the severity of the error's harm demands reversal,' and not 'whether the district court's action . . . deserves rebuke.'" *United States v. Farrell*, 672 F.3d 27, 36 (1st Cir. 2012) (quoting *United States v. Ross*, 77 F.3d 1525, 1539–40 (7th Cir. 1996)). But although those cases may describe a portion of the collective focus of all four prongs of plain error review, their assessment of the purposes of Rule 52(b) is incomplete.

In particular, the majority ignores the fact that Rule 52(b) does not merely seek to ensure "that justice may be done." Opinion at 7 (citation omitted). Instead, the Rule "reflects a careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed." *United States v. Frady*, 456 U.S. 152, 163 (1982). More important, the majority fails to consider the specific role played by the plainness requirement in preserving Rule 52(b)'s attempt to balance these competing interests.

When the specific purpose of the plainness requirement is considered, however, it becomes clear that the majority has erroneously expanded Rule 52(b)'s "circumscribed" exception to the forfeiture rule. That is, a review of Supreme Court precedent reveals that the plainness requirement ensures that Rule 52(b) only excuses a party's failure to satisfy the contemporaneous-objection rule in two types of cases: where an objection at trial should have been unnecessary or would have been futile. Because an objection at trial in this case would have been neither unnecessary nor futile, the majority has undermined the basic rules of error preservation.

First, the Court has determined that Rule 52(b) creates an exception to the rule of forfeiture where an objection at trial should have been unnecessary due

to the obviousness of the error committed in the trial court.  As the Supreme Court held in *Frady*, "recourse may be had to . . . Rule [52(b)] only on appeal from a trial infected with error so 'plain' the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it."  *Id.*; *see United States v. Turman*, 122 F.3d 1167, 1170 (9th Cir. 1997) ("Plain error, as we understand that term, is error that is so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection.") (citing *Frady*, 456 U.S. at 163).  Thus, contrary to the majority's contention that the focus of plain error review is not on whether the district court's action deserves rebuke, the Court's opinion in *Frady* indicates that Rule 52(b) generally creates an exception to the forfeiture rule only in those cases where a trial was marred by error so obvious that an objection should not have been necessary in order for the district court to have avoided it.  *Frady*, 456 U.S. at 163.

Given the focus of the plainness inquiry on whether error occurred in the trial court that was so clear that an objection should have been unnecessary, it becomes apparent that the plainness of an error must always be assessed using the state of the law at the time of trial except where doing so would not make sense.  Where, as in this case, the plainness of an error only becomes clear on appeal and the law was genuinely uncertain at trial, the proceedings in the trial court necessarily could not have been "infected with error so 'plain' the trial judge and prosecutor were derelict in countenancing it."  *Id.*; *see Turman*, 122 F.3d at 1170 ("When the state of the law is unclear at trial and only becomes clear as a result of later authority, the district court's error is perforce not plain; we expect district judges to be knowledgeable, not clairvoyant.").[2]

---

[2] The Court's holding in *Olano* does not create any reason to question the continuing applicability of the Court's conclusion in *Frady*.  *United States v. Olano*, 507 U.S. 725 (1993). In *Olano*, the Court merely held that "'plain' is synonymous with 'clear' or, equivalently, 'obvious.'"  *Id.* at 734.  The Court then noted that it "need not consider the special case where

(continued...)

Second, although the Supreme Court has created one exception to the plainness requirement's time-of-trial rule, the logic behind the Court's exception does not support the majority's holding in this case. Specifically, in *Johnson* the Court held that "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal [] it is enough that an error be 'plain' at the time of appellate consideration." *Johnson v. United States*, 520 U.S. 461, 468 (1997*).* The Court reasoned that a contrary rule, which would require a party to object to a district court's action "even though near uniform precedent . . . . held that course proper[,] . . . . would result in counsel's inevitably making a long and virtually useless laundry list of objections to rulings that were plainly supported by existing precedent." *Id.* *Johnson*, therefore, merely creates a limited exception to the time-of-trial rule in those cases where an objection would have been useless in the trial court given the state of the law at the time of trial.[3]

---

[2] (...continued)
the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified." *Id.* It simply noted that "[a]t a minimum, court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law." *Id.* Accordingly, because *Olano* explicitly declined to address this issue, it did nothing to expand Rule 52(b)'s exception to the rule of forfeiture.

[3] Contrary to Judge Owen's assertion, I do not interpret *Johnson* to create "an exception to Rule 52(b)." Owen Dissent at 1. Rather, I agree with two of our sister circuits that "*Johnson* represents an exception to [Rule 52(b)'s] general rule that error is assessed as of the time of trial, an exception *Johnson* carved out because when the law is settled at the time of trial, 'objections are pointless.'" *See United States v. Mouling*, 557 F.3d 658, 664 (D.C. Cir. 2009) (quoting *Turman*, 122 F.3d at 1170). I also disagree with Judge Owen's contention that the Court in *Johnson* did not base its holding on the fact that a contrary rule "would result in counsel's inevitably making a long and virtually useless laundry list of objections to rulings that were plainly supported by existing precedent." Owen Dissent at 4 (quoting *Johnson*, 520 U.S. at 468). Instead, the Court's "agreement" with the uselessness of such a rule was the *sole* reason given by the Court for its decision. If the Court was basing its opinion "entirely" on the plain language of the statute, it (1) would have said so and (2) would not have been so careful to limit its holding to cases "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal." *Johnson*, 520 U.S. at 468; *see id.* ("Petitioner, on the other hand, urges that such a rule would result in counsel's inevitably making a long and virtually useless laundry list of objections to rulings that were plainly
(continued...)

Where the law is unclear at trial, however, an objection is not useless. Here, for instance, an objection at trial would have been eminently useful because it was unclear at that time whether it was error for the district court to impose or lengthen Escalante's prison term in order to promote rehabilitation. When Escalante was sentenced, (1) we had not addressed whether district courts could impose or lengthen a prison term based on the need for rehabilitation, (2) our sister circuits had split on the question, and (3) the Supreme Court had not yet decided the issue. *See Tapia v. United States*, 131 S. Ct. 2382, 2386 & n.1 (2011). Accordingly, an objection at sentencing would have served a valuable purpose by allowing the district court to avoid a then-unsettled legal issue and offer alternative explanations for the length of the sentence imposed. *Turman*, 122 F.3d at 1170 ("When the law is such that an experienced district judge cannot be expected to detect the error on his own, that is precisely when it is most important for the parties to object.").

Indeed, in such cases, it is particularly important for counsel to comply with the contemporaneous-objection rule: that is, counsel should "raise [their] claim of error with the district court in such a manner so that the district court may correct itself and thus, obviate the need for our review." *Mondragon-Santiago*, 564 F.3d at 361 (citation omitted). *See Mouling*, 557 F.3d at 664 ("[W]here the law is unsettled at trial, objections are far from pointless—they serve a valuable function, alerting the district court to potential error at a moment when the court can take remedial action. Thus the interest in requiring parties to present their objections to the trial court, which underlies plain error review, applies with full force."); *Turman*, 122 F.3d at 1170 (holding that in cases where it was unclear whether error occurred under the law at the

---

[3] (...continued)
supported by existing precedent. We agree with petitioner on this point, and hold that in a case such as this—where the law at the time of trial was settled and clearly contrary to the law at the time of appeal—it is enough that an error be 'plain' at the time of appellate consideration.").

time of trial, "[a]n objection affords the judge an opportunity to focus on the issue and hopefully avoid the error, thereby saving the time and expense of an appeal and retrial").

Accordingly, the legal rationale offered by the majority for creating a new exception to the forfeiture rule is not supported by the Supreme Court's caselaw interpreting the plainness requirement. Rather, the majority has created a new exception to the forfeiture rule in cases where an objection neither (1) should have been unnecessary due to the obviousness of the court's error, *Frady*, 456 U.S. at 163, nor (2) would have been "virtually useless" given the state of the law at trial. *Johnson*, 520 U.S. at 468.[4]

2

The majority also offers a policy argument in support of its holding. But its argument is unpersuasive because it would equally justify scuttling the plainness requirement altogether.

The majority's policy argument proceeds as follows: (1) it cites *Puckett* for the proposition that the contemporaneous-objection rule is partially intended to prevent a party from "'sandbagging' the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor," 556 U.S. at 134 (citations omitted), and (2) it concludes that "in the very narrow situation we face here, it is unlikely" that a party would attempt to sandbag the district court, "since by waiting to object, the party asserting the error would be taking a risk that the appellate court would not rule in its favor

---

[4] Contrary to the panel's opinion in *United States v. Knowles*, 29 F.3d 947, 951 (5th Cir. 1994), the Supreme Court's opinion in *Griffith v. Kentucky*, 479 U.S. 314 (1987), does not have any bearing on the basic rules of error preservation. In *Griffith*, the Court held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." 479 U.S. at 328. However, the petitioners in both cases decided in *Griffith* had preserved their claims of error at trial on the relevant issue. *Id.* at 317–19. Accordingly, *Griffith* says nothing about cases where a party failed to preserve its claim of error in the district court; instead, it confirms the force of the basic rules, which require parties to properly preserve error in order to present a claim on appeal.

on the unsettled issue." Opinion at 7. The majority reasons that its decision will not significantly incentivize sandbagging because parties "necessarily would not have a crystal ball to know that the Supreme Court would favorably decide a case in the interim." *Id.* at 8.

However, this line of reasoning cannot justify the majority's decision to "bend slightly" the rule of forfeiture in only those cases where uncertain error at trial becomes clear on appeal. Rather, the majority's policy argument is indistinguishable from an attack on the applicability of the forfeiture rule in all cases where the plainness of an error was uncertain at the time of trial. Put another way, the force of the majority's argument would equally support a regime whereby the rule of forfeiture would be excused in all cases where the law was uncertain at trial, regardless of whether an intervening case has made an error plain. Just as parties lack the ability to predict that an intervening Supreme Court opinion will decide an unpreserved claim of error in their favor pending appeal when the law at trial was uncertain, they also lack the ability to predict how an appellate court will decide an unpreserved issue in their own case in the first instance when the law at trial is uncertain. Accordingly, the majority's policy argument does not justify bending the forfeiture rule in this context.

## C

By creating an exception to the forfeiture rule in cases where an objection would have served an important function, thereby allowing events after trial to affect the existence of trial error, the majority has turned the basic rules of error preservation upside down. Moreover, the majority has created this exception out of whole cloth, without any reference to the logic behind the exceptions to the forfeiture rule that the Supreme Court recognized in *Frady* and *Johnson*. Thus, the majority has ignored the Court's warning that "any unwarranted expansion of Rule 52(b) . . . would skew the Rule's careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time

around against our insistence that obvious injustice be promptly redressed." *Johnson*, 520 U.S. at 466 (citations and internal quotation marks omitted).

The true impetus behind the majority's decision appears to be that it thinks its decision furthers "justice," while only affecting a small minority of plain error cases. *See* Opinion at 8 ("In the vast majority of plain error cases, there will be no intervening Supreme Court decision, meaning that establishing a 'time of appeal' rule would not significantly alter trial counsel's incentive to object."). But the purpose of plain error under Rule 52(b) is not merely to promote an appellate court's idea of "justice." Instead, plain error seeks to achieve a balance between redressing obvious injustices *and* the need to incentivize parties to protect their own interests by preserving error in the trial court. *Frady*, 456 U.S. at 163. Our adversarial system largely depends on the robust incentives we have placed on trial lawyers to preserve a record of their objections at trial. An appellate court cannot significantly blunt those incentives merely based on its own idea of "justice."

Moreover, it may be that the majority has only created a small exception to the normal operation of the plainness requirement and that its holding will have little effect on a litigant's incentives to object in the district court. However, we lack the authority to create an exception to Rule 52(b)'s plainness requirement regardless of its size. *Johnson*, 520 U.S. at 466 ("Even less appropriate than an unwarranted expansion of . . . Rule [52(b)] would be the creation out of whole cloth of an exception to it, an exception which we have no authority to make.") (citation omitted). Accordingly, I respectfully dissent.

OWEN, Circuit Judge, dissenting.

The reasoning of the Supreme Court's decision in *Johnson v. United States*[1] seems to require that we construe Rule 52(b)[2] to mean that "plain error" includes error that was plain at the time of appeal even though the law was unsettled or unclear at the time of trial. In view of the Supreme Court's interpretation of when error is "plain error" under Rule 52(b), I agree with the en banc majority opinion's conclusion that the district court's error in considering the defendant's need for an anger management treatment program in selecting the length of the sentence to be imposed was "plain error." However, the error does not "seriously affect[] the fairness, integrity or public reputation of judicial proceedings" in light of the facts of this case.[3] I therefore dissent.

## I

Rule 52(b) provides, "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."[4] With great respect to JUDGE GARZA and his dissenting opinion in the present case, the Supreme Court did not create an "exception" to Rule 52(b) in *Johnson v. United States*. The Court's decision is very clear that it was construing Rule 52(b) as written. Writing for a unanimous Court, CHIEF JUSTICE REHNQUIST said, "[I]t is [Rule 52(b)] which by its terms governs direct appeals from judgments of conviction in the federal system," and "We [have] cautioned against any unwarranted expansion of Rule 52(b)."[5] The CHIEF JUSTICE continued, "Even less appropriate than an unwarranted expansion of the Rule would be the

---

[1] 520 U.S. 461 (1997).

[2] FED. R. CRIM. P. 52(b).

[3] *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

[4] FED. R. CRIM. P. 52(b).

[5] *Id.* at 466 (citing *United States v. Young*, 470 U.S. 1 (1985)).

creation out of whole cloth of an exception to it, an exception which we have no authority to make."[6]

The Supreme Court[7] then proceeded to construe the meaning of "plain" as used in Rule 52(b) as part of its analysis of the second prong of the familiar "plain error" construct set forth in *United States v. Olano*,[8] among other cases. In *Johnson*, the Court addressed "*when* an error must be plain to be reviewable."[9]   The Court observed that in the case before it, "the error is certainly clear under 'current law,' but it was by no means clear at the time of trial."[10] The error in *Johnson* was that the district court instructed the jury that the issue of materiality in a perjury case was for the court to decide and that the district court had determined that the defendant's statements were material.[11] The district court did not submit this element of the offense to the jury.[12] The district court's actions were in compliance with then-existing Circuit precedent.[13] Not only did counsel for the defendant fail to object to the district court's instruction to the jury regarding materiality, counsel for the defense had objected when the prosecution had offered evidence regarding materiality,

---

[6]  *Id.* (citing *Carlisle v. United States*, 517 U.S. 416, 425-26 (1996)).

[7]  JUSTICE SCALIA did not join in Parts II-B and II-C of the Court's opinion, which, respectively, contain an analysis of when error is "plain" and a discussion of "substantial rights."

[8]  507 U.S. 725 (1993).

[9]  *Johnson*, 520 U.S. at 467.

[10]  *Id.*

[11]  *Id.* at 464.

[12]  *Id.*

[13]  *Id.* at 464 (citing *United States v. Molinares*, 700 F.3d 647, 653 (11th Cir. 1983)).

arguing that materiality was an issue for the court to decide rather than the jury.[14]

The Supreme Court held in *Johnson* that "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal—it is enough that an error be 'plain' at the time of appellate consideration."[15]  The Court elaborated, "Here, at the time of trial it was settled that the issue of materiality was to be decided by the court, not the jury; by the time of appellate consideration, the law had changed, and it is now settled that materiality is an issue for the jury."[16]  The Court explicitly held that "[t]he second part of the *Olano* test is therefore satisfied."[17]  The second part of the *Olano* test is that the error is "plain" within the meaning of Rule 52(b).[18]  Accordingly, the words "plain error" include not only error that was obvious at the time of trial, but error that was not considered error at the time of trial.  Logically, this leaves no room for a definition of "plain error" under Rule 52(b) that *excludes* error known to be error at the time of appeal though the law was unsettled or murky at the time of trial.  As used in Rule 52(b), "plain error" simply cannot mean two different things, depending on whether the law was unclear at the time of trial or had changed by the time of appeal.  If well-settled law at the time of trial thereafter changed and there is "plain error" at the time of appeal, then unclear law at the time of trial that has become clear at the time of appeal cannot be excluded from the meaning of "plain error."

---

[14]  *Id.*

[15]  *Id.* at 468.

[16]  *Id.*

[17]  *Id.*

[18]  *United States v. Olano*, 507 U.S. 725, 734 (1993) ("The second limitation on appellate authority under Rule 52(b) is that the error must be 'plain.'  'Plain' is synonymous with 'clear' or, equivalently, 'obvious.'").

Although the Supreme Court did "agree" in *Johnson* with the argument that requiring error to be clear at the time of trial as well as the time of appeal "would result in counsel's inevitably making a long and virtually useless laundry list of objections to rulings that were plainly supported by existing precedent,"[19] this reasoning was not an independent basis or justification for the court's decision. It was an argument that supported the Court's answer to the ultimate inquiry, which was "*when* an error must be plain to be reviewable" *within the meaning of Rule 52(b).*[20] The decision in *Johnson* as to when error must be plain rested entirely on the meaning of "plain error" as used in Rule 52(b). It did not rest on the common law or an exception to common-law notions or traditions. The decision in *Johnson* regarding the meaning of "plain error" and when error is "plain" cannot be explained, or more importantly distinguished, based on practicalities or an analysis of trial practices or judicial economy in some circumstances as contrasted to others. The Court's ruling was based, as the decision itself says it must be, on the "Rule which by its terms governs direct appeals from judgments of convictions in the federal system."[21] That Rule is the text of Rule 52(b), nothing more, nothing less. It is worth reiterating the Court's admonition in *Johnson*: "Even less appropriate than an unwarranted expansion of the Rule would be the creation out of whole cloth of an exception to it, an exception which we have no authority to make."[22] The Supreme Court has spoken regarding the meaning of "plain error." Unless and until it changes that view, the logic of its decision in *Johnson* should control our interpretation of "plain error" and when error is "plain" within the meaning of Rule 52(b).

---

[19] *Johnson*, 520 U.S. at 468.

[20] *Id.* at 467.

[21] *Id.* at 466.

[22] *Id.*

## II

Congress has given parameters that constrain courts in the sentencing process. One of these is 18 U.S.C. § 3582(a), which provides in pertinent part:

> The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

I agree with the en banc majority opinion that the district court improperly considered the need for rehabilitation in selecting the length of the sentence it imposed. However, it is not clear from the record before us that this error affected substantial rights. There were other considerations that appeared to support the sentence selected. But even assuming that substantial rights were affected, our court should not exercise its discretion to correct the error.

The fourth prong of *Olano* is that the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."[23] In the present case, the advisory Guidelines sentencing range was 63 to 78 months of imprisonment. Escalante-Reyes received a below-Guidelines sentence of 60 months of imprisonment. He had a prior criminal history and a history of abuse of family members. The district court identified factors other than the need for rehabilitation that would amply support the reasonableness of a sentence of 60 months in prison. Under these circumstances, there has been no serious effect on the fairness, integrity, or public reputation of judicial proceedings.

\* \* \* \* \*

I respectfully dissent.

---

[23] *United States v. Olano*, 507 U.S. 725, 732 (1993) (alteration in original) (emphasis added) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).